Argued December 6, reversed and remanded December 27, 1917.
Motion to retax costs allowed in part January 29, 1918.

# CAPLES *v.* DITCHBURN.*

(169 Pac. 510.)

**Attorney and Client—Employment—Evidence—Satisfaction of Judgment.**

1. That ·defendant, sued for money collected by him on a judgment obtained by plaintiff, signed the satisfaction in his name as attorney for plaintiff, is some evidence that plaintiff employed him as attorney in the action in which the judgment was recovered; "attorney," as distinguished from "counsel," having under Sections 1074, 1083, L. O. L., power to satisfy judgment.

[As to implied authority of attorney in conducting litigation, see note in 132 Am. St. Rep. 148.]

**Attorney and Client — Action for Money Collected — Presumption — Burden of Proof.**

2. On evidence that plaintiff owned a judgment and that defendant as attorney collected it, the presumption is that plaintiff owned all the money collected; so that, if defendant would reduce plaintiff's recovery or postpone the right, he must do so by offering evidence, plaintiff not being required to anticipate defenses relied on.

---

*On necessity of demand as a condition of action to recover money collected by an attorney, see note in 28 **L. R. A.** (**N. S.**) 626.

REPORTER.

Attorney and Client—Action for Money Collected—Demand—Necessity of Proof.

3.  The answer in an action against an attorney for money collected claiming part of the money and justifying possession and detention of the remainder, it is unnecessary for plaintiff to give evidence of demand of payment, which it is obvious would have been idle.

From Multnomah: JOHN P. KAVANAUGH, Judge.

This is an action by H. H. Caples against John Ditchburn for money had and received. From a judgment of nonsuit plaintiff appealed. Reversed and remanded.

For appellant there was a brief over the name of *Messrs. Jenkins & Crawford,* with an oral argument by *Mr. B. B. Crawford.*

For respondent there was a brief over the names of *Mr. John Ditchburn* and *Mr. Carl M. Mack,* with an oral argument by *Mr. Ditchburn, in pro. per.*

Department 2.    Opinion PER CURIAM.

The plaintiff appealed from an involuntary judgment of nonsuit and the only question for decision is whether there was enough evidence to take the cause to the jury.

It is alleged in the complaint that the plaintiff obtained a judgment for $275, with costs and disbursements, in an action in which the defendant acted as his attorney; that the defendant collected the full amount of the judgment; and that the defendant has failed, after demand made, to deliver to the plaintiff the amount collected, less attorney's fees agreed upon.

The answer avers that a barge load of wood, which the plaintiff had agreed to deliver to the defendant, was attached and that

"it was agreed by and between this plaintiff and this defendant, together with Mr. A. Hansen, an attorney at law, authorized to and practicing in the state of Oregon, to bring an action to recover the possession of the said wood * * it being understood and agreed that the defendant would pay to the plaintiff, the sum of $1.75 per cord for all wood recovered, or found by the court or jury to have been taken off the barge * * that there was to be no other or further consideration for legal services or otherwise"; that pursuant to the agreement an action was commenced "and it was found that 110 cords of wood had been taken; that the said wood was not recovered, and that the defendant thereupon became indebted to this plaintiff in the sum of $192.50; that it was further understood and agreed, that this defendant should not pay the same, and that the same should not be due and owing, until the said wood or its value was recovered by this defendant; that on or about the 20th day of May, 1915, this defendant recovered the value of said wood, and became indebted to this plaintiff, in the sum of $192.50; that thereafter, this defendant as an attorney at law, advised and consulted to and with the plaintiff, in regard to various matters of business and appeared as an attorney at law in certain court proceedings, of the reasonable value of $10, leaving a balance owing to plaintiff of $182."

The answer contains another separate defense which is to the effect that two brothers of the plaintiff were indebted to the defendant and in consideration of the defendant agreeing to postpone that indebtedness the plaintiff stipulated that the moneys due him from the defendant "need not and should not be paid or become due until a final adjustment between the brothers themselves and this defendant"; and "that there has been no final settlement or adjustment between the said brothers and this defendant and that said sum of $182 is not yet due from defendant to plaintiff herein."

Aside from denials, the reply admits that an action was prosecuted for the recovery of the wood, or its value, taken from the barge and alleges that it resulted "in the judgment mentioned in plaintiff's complaint herein."

The plaintiff offered, and the court received without objection, a certified copy of the judgment which had been obtained by the plaintiff together with a satisfaction thereof. The plaintiff was then sworn and testified that he had had a conversation with the defendant "in connection with this action against Mc-Crum and others in regard to collecting the judgment, and he told me that he had collected the full amount of the judgment." The plaintiff declined to offer any further evidence and the court then granted an involuntary judgment of nonsuit.

1. The gist of the complaint is that the defendant as the attorney for plaintiff collected money on a judgment held by the plaintiff. By his answer the defendant admits that he is an attorney. The plaintiff alleges that he obtained a judgment for the wood received from the barge; and a fair construction of the answer authorizes the statement that the defendant alleges and therefore admits that such a judgment was rendered. Moreover, a certified copy of the judgment proves that it was in fact obtained. The certified copy of the satisfaction of the judgment is evidence that John Ditchburn collected the amount due on the judgment; the testimony of the plaintiff to the effect that the defendant told the witness "that he had collected the full amount of the judgment" is additional evidence that the defendant made the collection; and the allegation in the answer "that on or about the 20th day of May, 1915, this defendant recovered the value of said wood" is an express admission that he did in truth collect the

amount of the judgment. But the defendant insists that there is no evidence of his employment as attorney. Assuming that plaintiff's right of recovery is dependent upon the fact of the employment of the defendant as attorney there is nevertheless some evidence of such employment in addition to the inferences that may be drawn from the averments found in the answer. The satisfaction of the judgment is signed thus: "John Ditchburn atty for Plaintiff H. H. Caples." The Code distinguishes between "attorney" and "counsel," for Section 1074, L. O. L., reads thus:

"An attorney is a person authorized to appear for and represent a party, in the written proceedings in any action, suit, or proceeding, in any stage thereof. An attorney, other than the one who represents the party in the written proceedings, may also appear for and represent a party in court, or before a judicial officer, and then he is known, in the particular action, suit, or proceeding, as counsel only, and his authority is limited to the matters that transpire in the court or before such officer at the time."

Another provision of the Code, Section 1083, subdivision 2, so far as it is material here, defines the authority of an attorney as follows:

"An attorney has authority,— * * 2. To receive money or property claimed by his client in an action, suit, or proceeding, during the pendency thereof, or within three years after judgment or decree, and upon the payment or delivery thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment or decree."

2. There was evidence tending to show that the plaintiff owned a judgment and that the defendant as attorney collected the money due on the judgment. It is admitted that no part of the moneys collected has been paid to the plaintiff. In the absence of an admission

by the plaintiff or evidence by the defendant that the latter owned part of the sum collected the presumption would be that the plaintiff owned all of it. The plaintiff admits, however, that a portion of the moneys collected belongs to the defendant. If the defendant would reduce the amount claimed by the plaintiff or if he would postpone the right of the plaintiff he must do so by offering evidence. The plaintiff was not obliged to anticipate the defenses relied upon by the defendant.

3. Although the complaint alleged that a demand was made upon the defendant and the latter admitted at the trial that no moneys have been paid to the plaintiff, no evidence was offered to show that payment had been demanded of the defendant. The defendant, however, by his answer claims ownership of part of the moneys and justifies his possession and detention of the remainder, and it is obvious, therefore, that a demand would have been a mere idle ceremony. The pleading interposed by the defendant rendered it unnecessary for the plaintiff to offer evidence of a demand: *Rosenau* v. *Syring,* 25 Or. 386, 389 (35 Pac. 845); *Cox* v. *Delmas,* 99 Cal. 104 (33 Pac. 836); *Burrows* v. *McCalley,* 17 Wash. 269 (49 Pac. 508); *Ott* v. *Hood,* 152 Wis. 97 (139 N. W. 762, Ann. Cas. 1914C, 636, 44 L. R. A. (N. S.) 524); 6 C. J. 706.

The plaintiff offered sufficient evidence to entitle him to have his claim submitted to the jury. The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.          COSTS RETAXED IN PART.

MR. JUSTICE HARRIS sat for MR. CHIEF JUSTICE MCBRIDE.

MR. JUSTICE BURNETT sat for MR. JUSTICE BEAN.

Allowed in part January 29, 1918.
MOTION TO RETAX COSTS.
(169 Pac. 000.)

On respondent's motion to retax costs. Motion sustained in part.

*Mr. Carl M. Mack,* for the motion.

*Mr. John Ditchburn, in pro. per.*

*Messrs. Jenkins & Crawford, contra.*

Department 2. Opinion PER CURIAM.

The respondent has objected to the cost bill filed by the appellant. It is not necessary to discuss the objections in detail; but it will be sufficient to observe the requirements of Section 570, L. O. L.; as construed in *Macleay Estate Co.* v. *Miller,* 85 Or. 623 (167 Pac. 575), and we therefore make an itemized statement of the costs and disbursements now allowed by us as follows: Transcript, $2; printing abstract and briefs, $41; clerk's filing fee, $15; trial fees, $6; costs, $15.

On the authority of *School District No. 30* v. *Alameda Construction Co., ante,* p. 132, the claim of $1.50 for "verification of the cost bill and two affidavits" is disallowed.                   MOTION SUSTAINED IN PART.

Argued December 20, 1917, affirmed January 29, 1918.

## CITY OF PORTLAND v. BLUE.*

(170 Pac. 715.)

**Judgment—Entry Nunc Pro Tunc.**

1. In sewer construction reassessment proceedings, where no judgment was entered upon verdict in Circuit Court, and no order entered except an order discharging the jury, which, under section 179, L. O. L., defining a judgment as the final determination of the parties' rights, is not a judgment, but, on appeal to the Supreme Court, both parties assumed judgment was duly entered, the court could, two years thereafter, enter judgment on the verdict *nunc pro tunc*, notwithstanding Section 201, requiring the clerk to enter judgment on the verdict the day it is returned, for, the law leaving the court no discretion, it operates in lieu of formal action by the court as a direction to the clerk to enter judgment.

**Trial—Reassessment Proceedings—Verdict.**

2. In sewer construction reassessment proceedings, appealed to Circuit Court, a verdict for plaintiff, assessing benefits to defendants' property "the same as is set forth in" a city ordinance, which was in evidence, was not too indefinite, under the rule of liberal construction of verdicts.

**Municipal Corporations—Collection of Special Assessments.**

3. Under the Portland charter, it was proper for the Circuit Court, on appeal in sewer construction reassessment proceedings, to direct that a certified copy of the judgment for the city be sent to the city auditor for enforcement by the city of the liens adjudged.

**Appeal and Error—Harmless Error—Judgment.**

4. Where lack of entry of judgment in lower court was not discovered until after appeal was decided and mandate of appellate court was entered in journal of lower court, the unsuccessful appellants in the first appeal could not, on second appeal, object that the lower court was without power to set aside its order entering the mandate of the appellate court and to incorporate a new order to that effect in its *nunc pro tunc* judgment entry; such action working no injury to appellants, as they admitted liability for costs on prior appeal, and were called on to make but one payment thereof.

**Appeal and Error—Objection Below—Apportionment of Costs.**

5. In sewer construction reassessment proceedings under the Portland charter, the objection could not be first raised on appeal to the Supreme Court that the Circuit Court erred in giving a joint and several judgment against all the defendants for Circuit Court costs instead of apportioning these costs between the defendants under Portland City Charter, § 402, as to costs in Circuit Court.

From Multnomah: GEORGE N. DAVIS, Judge.

---

*Authorities discussing the question as to entry of judgment *nunc pro tunc* are collated in a note in 20 **L. R. A.** 143.        REPORTER.

Department 2. Statement by MR. JUSTICE Mc-CAMANT.

A former appeal taken in this cause was heard and determined: See 77 Or. 131 (149 Pac. 548). It is unnecessary to restate the facts set out in the former opinion. The mandate of this court was entered in the journal of the lower court August 6, 1915. Thereafter it was discovered by counsel for the city that the judgment from which defendants had appealed was not entered in the journal. The misprision was called to the attention of the court and on April 13, 1916, a judgment was entered assessing the properties of defendants in the sums specified in Ordinance No. 24,280, a certified copy of which was in the record. Judgment was given in favor of the city and against the defendants and their surety on appeal to the Circuit Court for $193.55, plaintiff's costs in the lower court, and against defendants and their surety on appeal to this court in the sum of $45.30, plaintiff's costs in this court. Defendants appeal from this judgment.        AFFIRMED.

For appellants there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. C. L. Whealdon,* with an oral argument by *Mr. Duniway.*

For respondent there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, with an oral argument by *Mr. Latourette.*

MR. JUSTICE MCCAMANT delivered the opinion of the court.

1. The verdict of the jury which tried this cause was rendered and filed March 30, 1914. It is claimed that the court was without power to enter judgment on this

verdict April 13, 1916. Authorities are cited to the effect that on the expiration of the term at which a judgment is rendered, the court's control over the judgment lapses. These authorities are without relevancy because in this case no order was entered on the rendition of the verdict except an order discharging the jury. This order was not a judgment: Section 179, L. O. L.

It is provided by Section 201, L. O. L.:

"If the trial be by jury, judgment shall be given by the court in conformity with the verdict and so entered by the clerk within the day on which the verdict is returned."

The statute leaves no discretion in the trial court; its duty is clearly pointed out. The successful litigant should not suffer because the court has neglected to obey this provision of the law. *Actus curiae neminem gravabit.* It is held that where a confession of judgment is filed and there is an omission of the entry of the judgment in the journal, the rights of the judgment creditor will be protected by a *nunc pro tunc* order: *Davidson* v. *Richardson,* 50 Or. 323, 327 (89 Pac. 742, 91 Pac. 1080, 126 Am. St. Rep. 738, 17 L. R. A. (N. S.) 319); *Doughty* v. *Meek,* 105 Iowa, 16 (74 N. W. 744, 67 Am. St. Rep. 282); *Risser* v. *Martin,* 86 Iowa, 392 (53 N. W. 270). In the last of these cases it is said:

"The law operated in lieu of formal action by the court as a direction to the clerk to enter judgment."

We think that this principle is equally applicable to the case at bar. The case falls without the doctrine of *Grover* v. *Hawthorne,* 62 Or. 65, 75 (116 Pac. 100, 121 Pac. 804); *Frederick & Nelson* v. *Bard,* 66 Or. 259, 262 (134 Pac. 318), and *National Council* v. *McGinn,* 70 Or. 457, 461 (138 Pac. 493). The presumption that judgment was rendered in the case at bar is strengthened by defendants' appeal therefrom and by the fact that on

appeal both parties assumed that the judgment was duly entered. It was therefore within the power of the Circuit Court to enter judgment *nunc pro tunc.*

It has been held that the portion of Section 201, L. O. L., quoted above is not mandatory, but directory: *Skelton* v. *Newberg,* 76 Or. 126, 136 (148 Pac. 53); *Fisher* v. *Portland Ry., L. & P. Co.,* 77 Or. 529 (151 Pac. 735). While the judgment in this case was entered after the lapse of a longer time than in the above cases, the defendants have not been prejudiced by the delay. They are taking advantage of the situation to raise on this appeal certain questions which were not mooted on the previous appeal.

The case of *People* v. *Petit,* 266 Ill. 628, 632 (107 N. E. 830), involved the construction of a statute which directed the clerk to enter judgment "before the final adjournment of the term or as soon thereafter as practicable." The statute imposed on the clerk a fine for failure "to enter of record any order by or before the next term after it is rendered." The judge's docket showed that on October 17, 1913, a verdict was received and judgment was ordered on the verdict. This judgment was not entered until December 4th. The verdict had been received at the September term of the court. The October term of the court intervened and no action was taken in the premises. The entry was not made until the December term. The Supreme Court said:

"The penalty for such failure was made to fall upon the clerk by way of fine, and it was not intended that a heavier penalty should fall upon litigants by the loss of the results of their litigation. There is no such limit of time as counsel urge, upon the authority of the clerk to enter the judgments, decrees and orders made by the court."

The court was justified in entering judgment in the case at bar on April 13, 1916.

2. It is next contended that the verdict was too indefinite. The verdict was in the following form:

"We, the jury in the above-entitled cause, find for the plaintiff, and assess the benefits to the property of defendants the same as is set forth in Ordinance No. 24,280 of the City of Portland."

The ordinance referred to had been received in evidence. In *Lew* v. *Lucas*, 37 Or. 208, 212 (61 Pac. 344), Mr. Justice BEAN says:

"A verdict should be construed liberally and not under the technical rules of construction which are applicable to pleadings; and, if the meaning of the jury can be ascertained and the point in issue can be concluded from its verdict the court will, however informally it may be expressed, mold it into form, and make it serve."

In *Consolidated Gold etc. Min. Co.* v. *Struthers*, 41 Mont. 565, 569 (111 Pac. 152), it is said:

"A verdict is not to be technically construed, but is to be given such a reasonable construction as will carry out the obvious intention of the jury. In arriving at this intention, reference may be had to the issues made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial; and if by a fair and reasonable construction of it, in view of the whole record, the intention of the jury is manifest it should be allowed to stand."

In *Pittsburgh C. C. & St. L. R. Co.* v. *Darlington's Admr.*, 129 Ky. 266, 271 (111 S. W. 360), it is said:

"Courts view the findings of the jury with great leniency, and every reasonable presumption is indulged in aid of a general verdict. The main thing is to get an understanding of what the jury intended. Their intent is to be sought for in the language they used in their verdict, interpreted in the light of the record. Resort may be had to the pleadings or other parts of the record to see what the jury meant by their verdict."

The verdict in this case and the judgment which conforms thereto are sufficient within the rule announced in these authorities.

3. It is contended that the Circuit Court erred in directing that a certified copy of the judgment be sent to the City Auditor for enforcement by the city of the liens adjudged. This practice is approved in *West* v. *Scott-McClure Land Co.*, 84 Or. 296, 301 (164 Pac. 554), and *Elliott* v. *City of Portland,* decided December 27, 1917.

4. Defendants also contend that the lower court was without power to set aside its order entering the mandate of this court and to incorporate a new order to that effect in its judgment entry. It is unnecessary to notice this contention because the action complained of worked no possible injury to defendants. They do not dispute their liability for Supreme Court costs and they are called upon to make but one payment of these costs.

5. It is provided by Section 402 of the Portland charter of 1903, which is still in force and applicable to this proceeding:

"If the judgment assessed by the jury against any appellant be not less than that fixed in the assessment appealed from, the judgment, in addition to declaring the assessment found, shall be entered against such appellant and his sureties for his proportion of the costs of such appeal."

The lower court gave a joint and several judgment against all of these defendants for Circuit Court costs. It is claimed that the costs should have been apportioned between the defendants, but we are not advised of the basis of the apportionment contended for. The record fails to show that this matter was called to the attention of the lower court or that the point relied on is reserved in any way. This circumstance precludes

our consideration of the question: *State v. Anderson,*
10 Or. 448; *State v. Abrams,* 11 Or. 169 (8 Pac. 327);
*United States Mortgage Co.* v. *Marquam,* 41 Or. 391 (69
Pac. 37, 41); *Stoddard Lumber Co.* v. *Oregon-Wash.
R. & N. Co.,* 84 Or. 399, 418 (165 Pac. 363).

The judgment is affirmed.                         Affirmed.

Mr. Chief Justice McBride, Mr. Justice Moore and
Mr. Justice Bean concur.

Argued October 10, affirmed October 23, 1917, rehearing denied January 8, supplemental petition for rehearing denied February 5, 1918.

# COLUMBIA REALTY INVESTMENT CO. *v.*
# ALAMEDA LAND CO.*

(168 Pac. 64, 440.)

**Brokers—Right to Commission.**

1. As a general rule, a broker is entitled to its commission when it produces a purchaser with whom the seller made a binding contract of sale; but the rule is subject to modification by the contract of the parties.

[As to when a broker becomes entitled to commissions, see note in 28 Am. St. Rep. 546.]

**Brokers—Contracts—Construction.**

2. A broker's contract for commissions, to be paid on a basis of 20 per cent of the selling price out of the first moneys collected from the sale of lots, entitling the agents to retain out of each payment collected such amount as was then due and payable, but not otherwise, entitles the broker to commission, not at all events, but only out of a specific fund.

---

*On effect of contract expressly making broker's right to commissions dependent upon sale of property or other condition beyond that ordinarily implied, see note in 29 L. R. A. (N. S.) 533.

As to broker's right to commission, where purchaser is unable to ultimately conclude deal, under special terms of employment of broker, see note in 20 L. R. A. (N. S.) 1168, 1172, citing and reviewing *Bush v. Abraham,* 25 Or. 336 (35 Pac. 1066), and *Holbrook* v. *Investment Co.,* 30 Or. 259 (47 Pac. 920); also *Riggs* v. *Turnbull,* 105 Md. 135 (66 Atl. 13, 11 Ann. Cas. 783, note; 8 L. R. A. (N. S.) 824). See, also, note in 44 L. R. A. 605; 9 C. J. 594, 632.    Reporter.

**Brokers—Commission—Specific Funds.**

3. A promise to pay a broker commission out of a specific fund, to be collected by him, is enforceable only on allegations and proof that the fund named is adequate for the payment demanded.

**Assignments—Broker's Contract—Right to Commission.**

4. Mere fact that a broker, having a contract for commissions to be paid out of a certain fund, to be collected from the sale, assigned his contract, did not give the assignee a right to his commission at all events; but he was entitled only to a commission on the terms on which the broker would have been entitled thereto.

**Appeal and Error—Presumptions.**

5. In the absence of bill of exceptions containing the testimony, the court on appeal is bound to assume that a finding is supported by competent proofs.

**Trial—Reception of Evidence.**

6. Where the complaint failed to state facts sufficient to constitute a cause of action, and the affirmative matter in reply was material only as tending to rebut the counterclaim pleaded in the answer, testimony in support of the reply could be received only in rebuttal. and it was not error to reject it as part of plaintiff's case in chief.

**Trial—Offer of Proof—Sufficiency.**

7. An offer of proof of certain facts upon which plaintiff relied, without naming witnesses or stating the testimony expected to be elicited from them, was insufficient.

**Brokers—Actions—Evidence—Admissibility.**

8. In a broker's action for commission, to which under his contract he was entitled only if the sale was completed and the price paid, it was competent for the defendant to prove that it canceled contracts held by purchasers who were unable to pay.

**Brokers—Actions—Findings—Sufficiency.**

9. Where the court found that the broker had received all commissions to which he was entitled, except a certain sum, that all the cancellations of contracts had been necessary, that the expense thereof was a certain sum to be borne under the contract proportionately by the broker and defendant, the findings supported a judgment in defendant's favor for the difference between the commission due and the balance due defendant because of the cancellations, and failure to make additional findings was not error.

ON PETITION FOR REHEARING.

**Appeal and Error — Burden to Show Prejudice — Exclusion of Evidence.**

10. The presumption being that there was no error when plaintiff's testimony was excluded, the burden was on plaintiff to show that such testimony was admissible, and that its exclusion was prejudicial, in order to work reversal, in view of Section 556, L. O. L., permitting reversal only for errors substantially affecting the rights of the appellant.

**Appeal and Error — Presumptions — Recital — Certificate of Offer of Proof.**

11.  The certification of a bill of exceptions, which recited an offer of proof, did not raise the presumption that the witnesses offered were present and the evidence was properly offered, or import waiver by the trial court of the calling of witnesses.

**Trial—Offer of Proof—Sufficiency.**

12.  An offer of proof should state facts, not conclusions, and its language should be distinct and specific and not vague or general; and it is not sufficient that it state the ultimate facts in language appropriate to a pleading, but it must set out the evidentiary facts.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.   Statement by MR. JUSTICE McCAMANT.

This is an action brought to recover a balance of commissions alleged to be due plaintiff for the sale of parcels of defendant's property in Multnomah County. It appears that on March 9, 1912, the defendant entered into a contract with E. Z. Ferguson and H. L. Hamblet for the sale of the property in question and for the performance of other services.   Ferguson and Hamblet were given the exclusive sale of the property for a period of nine months at a schedule of prices attached to the contract as an exhibit.   It was provided that sales might be made for cash or on installments. In the latter event at least 10 per cent of the purchase price was to be paid in cash and the balance in monthly installments of at least one per cent of the purchase price, provided that the entire price should be payable within five years.   Attached to the contract was a form of sales agreement which provided that on default of the purchaser in making the stipulated payments his contract could be forfeited.

The contract of defendant with Ferguson and Hamblet provided that in case the latter should sell $25,000 worth of property within six months they

should be entitled to an extension of three months on their sales contract:

"It being further expressly understood and agreed that if said total amount of said sales does not aggregate the full amount of Twenty-five Thousand Dollars ($25,000.00) within a period of six months from the date hereof as aforesaid, that then and in that event the selling agency shall immediately terminate and be at an end, and said Agents shall have no further interest or right in or to or under this contract, except that they shall be entitled to their commission theretofore earned by them for selling lots hereunder as aforesaid, the same to be paid when collected by said Company; and in any event this contract and all rights hereunder, except as to the commissions earned, and in the event said contract shall be extended as aforesaid, shall terminate within nine (9) months from the date hereof and all rights of said Agents shall thereupon absolutely cease and determine."

It is probable that the parties originally contemplated only a six months' contract, which was to be extended if the agents sold the specified amount of property. As finally drawn, the contract covered a period of nine months at all events and contained the foregoing provision for its extension.

The compensation of the agents was covered by the following stipulations:

"Said Agents shall receive in full payment for their services under this agreement, commissions upon the selling prices set forth in said Exhibit 'C' as aforesaid, as follows:

"A total commission of twenty-five per cent (25%) on all sales made by or through said Agents, which said twenty-five per cent (25%) commission shall be divided as follows: Twenty per cent (20%) for selling said property and five per cent (5%) for collecting the purchase price and attending to the general affairs of the Company as hereinafter set forth. Said commissions shall be paid as follows: said Agents shall be en-

titled to take and receive a sum equal to twenty per cent (20%) of the selling price as aforesaid, out of the first moneys collected from the sale of each and every lot sold under this agreement.  The remaining five per cent (5%) of said selling price shall be paid as follows: two and one-half per cent (2½%) shall be paid when the purchaser has paid not less than twenty-five per cent (25%) of the said selling price of said lot, and two and one-half per cent (2½%) when said Agents have complied with all the terms and conditions of this agreement; provided, however, that said Agents may, at any time after fifty per cent (50%) of said selling price has been paid, upon furnishing said Company a good and sufficient bond with approved securities in an amount satisfactory to said Company, be entitled to withdraw said last-mentioned two and one-half per cent (2½%); said bond to be conditioned on their faithful compliance with all the terms, conditions and covenants of this agreement, except that said bond will not guarantee the selling of said property."

"Said Agents may retain out of each payment collected by them such amount, as herein provided, as may be then due and payable to them as commission aforesaid, but not otherwise, and said Agents must, upon demand of the Company, pay over to said Company all moneys collected by them as such agents less any commission retained by them out of such payments under authority of this agreement, and deliver with each payment so made to said Company a full and true itemized statement of the collection included therein and the commission retained out of such collection."

After other provisions, immaterial for present purposes, the contract recited:

"It is further agreed that the President and Secretary of said  Company and Mr. O. L. Ferris of the Columbia Trust Company of Portland, Oregon, are hereby appointed a committee or board of arbitrators, with authority from time to time to raise the selling price of lots marked on said schedule 'C' as in their

judgment may seem best, and that such raise in price or value, that is to say: the amount over and above the present selling price as set forth in said schedule 'C,' not including the increase on account of city liens, shall, on all property sold, be divided equally, share and share alike, between said Agents and said Company, as a further commission to said Agents, provided that said additional commission shall not be paid until said Company has received fifty per cent (50%) of the purchase price of the lot or lots so sold, when it shall be paid upon demand to said Agents.''

On the same day that the above contract was entered into, Ferguson and Hamblet assigned to plaintiff the exclusive right to sell the property for the time stated and to receive the commission of 20 per cent provided therefor, the assignors retaining their other rights under the contract. Defendant assented to the assignment.

The complaint alleges the incorporation of the parties, the making of the foregoing contract, which was attached as an exhibit to the complaint, and the assignment from Ferguson and Hamblet to plaintiff. It is alleged that plaintiff effected sundry sales under the contract and that there are due and unpaid to plaintiff commissions on such sales aggregating $2,619.36. The complaint lists the property sold, the names of the purchasers and the unpaid commissions on each of these sales.

The answer admits the incorporation of the parties, the making and assignment of the contract and the negotiating of the sales specified in the complaint. The other allegations of the complaint are denied. It is affirmatively alleged that the sales contract contained the following provision:

''It is further understood and agreed that in the event that it shall become necessary to cancel any of

the contracts for sale on the installment plan, the expense of such cancellation and foreclosure of such contracts shall be borne by the company and said agents in proportion to the amount that each shall have received on account of said sale."

The answer alleges that it was necessary to cancel and foreclose many of the contracts; that defendant's expense in that regard was $351.55, and that an apportionment of that sum in the manner provided by the contract would charge plaintiff with $309.26. The answer set up the amount paid by the purchasers on account of each piece of property sold and the disposition of these sums as between plaintiff and defendant. The answer alleged that plaintiff had received $222.19 in excess of commissions earned and judgment was asked for this sum and for $309.26.

The reply admits that the contract contained the provision quoted in the answer and except in the case of one lot admits that the amounts received by plaintiff were as stated in the answer. The reply takes issue with the allegations of the answer as to the amounts paid by the purchasers and denies that it was necessary to cancel any of the contracts.

As an affirmative reply to defendant's counterclaim, plaintiff alleges that the prices of the lots had been raised by mutual consent and that a market had been created for them by plaintiff's efforts; that defendant thereupon divided the unsold lots among its stockholders and that these stockholders offered the lots for sale at prices so low that previous purchasers were able to forfeit existing contracts and save money by buying lots equally desirable at the new prices. It is alleged that:

"If any contracts were forfeited or canceled, or if any purchasers failed to carry out their agreements

which they had executed upon the sale of lots to them through the plaintiff corporation, it was by reason of the defendant corporation having knowingly and wrongfully thrown upon the open market its lots at greatly reduced prices, as hereinabove set forth, and thus making it profitable for the said purchasers to seek to have their contracts canceled and annulled."

The reply alleges that plaintiff's commission should be based on the purchase price of the property sold by contract without regard to cancellations or defaults and it is averred that the misconduct of defendant should estop it from resisting this claim.

It appeared that shortly before the expiration of the nine months' period covered by the contract the parties agreed to raise the prices of the unsold lots and some lots were sold by plaintiff at the higher prices.

The case was tried by the court without the intervention of a jury. The material findings of the lower court were these:

"That the plaintiff entered upon the work of selling the lots mentioned in said agency contract between said defendant and said Ferguson and Hamblet, and hereinafter referred to as the 'Agency Contract,' and among other lots sold by it, the plaintiff did sell the lots mentioned and described in paragraph six of the first cause of action in the complaint of the plaintiff herein, and the court finds that the practice adopted by the parties hereto, in the matter of the payment of commissions was to pay plaintiff out of the first money received on the purchase price of a lot sold by plaintiff, twenty per cent of the price for which it was sold, whether sold for the list price or for a higher price, and after the defendant had been paid fifty per cent of the purchase price, out of the first money thereafter collected the plaintiff was paid thirty per cent of the sum for which the lot sold in excess of the list price, if it was sold for any amount in excess thereof, and

the Court finds that on this basis or practice of computing and paying commissions the plaintiff had been paid all commissions earned by it at the time this action was instituted, excepting the sum of $65.16, which sum was then due it for commissions earned by it and unpaid.

"The Court also finds as a fact that it became necessary to cancel and foreclose certain contracts of sale made and procured by plaintiff of lots in the list attached to the agency contract aforesaid, because of the failure and refusal of the purchasers to make payment of the installments stipulated to be paid on account of the purchase price, and that the cost and expense of such cancellations and foreclosures aggregate the sum of $351.55, and that defendant had received on account of the purchase price of the lots, the contracts for which were canceled and foreclosed, the sum of $268.18, and plaintiff had received on account of the sale of such lots the sum of $2,081.67, and that defendant, having paid the total cost and expense of such cancellations and foreclosures, is entitled to recover of and from the plaintiff its proportion thereof, namely, the sum of $309.26, less the sum of $65.16 due plaintiff for commissions as above found, making the amount which the defendant is entitled to recover from the plaintiff $244.10."

The conclusions of law and judgment were in accord with these findings and plaintiff appeals.

Affirmed.

For appellant there was a brief over the names of *Mr. Loyal H. McCarthy* and *Mr. J. Le Roy Smith,* with an oral argument by *Mr. McCarthy.*

For respondent there was a brief over the name of *Messrs. Fulton & Bowerman,* with an oral argument by *Mr. Charles W. Fulton.*

MR. JUSTICE MCCAMANT delivered the opinion of the court.

1. Plaintiff contends that when it produced a purchaser with whom defendant made a binding contract of sale, it earned its commission of 20 per cent of the purchase price and its right to this commission was not lost by the default of the purchaser or the cancellation of his contract. This is the general rule: *Stewart* v. *Will,* 65 Or. 138, 140, 141 (131 Pac. 1027). But it is subject to modification by the contract of the parties. The material question here is whether the contract on which plaintiff relies contains a promise to pay commissions at all events or only out of a specified fund, to wit, the amounts paid by the purchasers. It is provided in paragraph 1 that in default of the extension tentatively provided for the agency should terminate "except that they (the selling agents) shall be entitled to their commission theretofore earned by them * * , the same to be paid when collected by said company."

In the second paragraph the contract specifies the commissions of the agents and provides:

"Said commissions shall be paid as follows: said agents shall be entitled to take and receive a sum equal to twenty per cent of the selling price aforesaid, out of the first moneys collected from the sale of each and every lot sold under this agreement."

The foregoing language plainly suggests an intent of the parties to pay commissions out of the moneys collected from the purchasers of the property. This intent is emphasized by the absence from the contract of an express promise of defendant to pay the commissions. Further light is thrown on the intent of the parties by the following language, found in paragraph 3:

"Said Agents may retain out of each payment collected by them such amount, as herein provided, as may be then due and payable to them as commission aforesaid, but not otherwise."

The language means that the agents are entitled to retain out of the moneys collected on each sale, such sum as shall suffice to pay the commission earned on that sale. They are not entitled to charge to defendant all commissions earned by all sales effected and retain out of their collections all moneys standing to their credit in such account. It affirmatively appears from the form of agreement attached to the sales contract that the parties contemplated that some of the purchasers would fail to make the monthly payments called for and that some of these agreements of purchase would have to be canceled. The sales contract makes provision for the apportionment between the parties of the expense incident to such cancellations.

In paragraph 8 there is provision for raising the prices of the lots and it is provided that:

"The amount over and above the present selling price * * shall, on all property sold, be divided equally, share and share alike, between said Agents and said Company as a further commission to said Agents, provided that said additional commission shall not be paid until said Company has received fifty per cent (50%) of the purchase price of the lot or lots so sold, when it shall be paid upon demand to said Agents."

2, 3. It may be conceded that the language of this contract is not well chosen to effect the purpose in view, but we think the intent of the parties sufficiently appears that plaintiff was to be paid commissions not at all events, but only out of a specific fund. Such a promise to pay is enforceable only on allegations and

proof that the fund named is adequate for the payment demanded: *Owen* v. *Lavine,* 14 Ark. 389, 396; *Waters* v. *Carleton,* 4 Port. (Ala.), 205; *National Sav. Bank* v. *Cable,* 73 Conn. 568, 572 (48 Atl. 428); *Fulton* v. *Varney,* 117 N. Y. App. Div. 572, 576 (102 N. Y. Supp. 608); *Morrison* v. *Austin State Bank,* 213 Ill. 472, 487 (72 N. E. 1109, 104 Am. St. Rep. 225, 233); *Kelly* v. *Bronson,* 26 Minn. 359, 360 (4 N. W. 607); *Welch* v. *Mayer,* 4 Colo. App. 440, 443 (36 Pac. 613, 614.)

It is held specifically that a real estate broker cannot recover commissions payable out of the purchase price without proof that enough of the purchase price has been paid to cover the commissions claimed: *McPhail* v. *Buell,* 87 Cal. 115 (25 Pac. 266); *Lindley* v. *Fay,* 119 Cal. 239, 243 (51 Pac. 333); *Boysen* v. *Frink,* 80 Ark. 254, 258 (96 S. W. 1056). Plaintiff cites *Hugill* v. *Weekley,* 64 W. Va. 210 (61 S. E. 360, 15 L. R. A. (N. S.) 1262), and *Cheatham* v. *Yarbrough,* 90 Tenn. 77, 80 (15 S. W. 1076). These were cases in which the brokers had produced purchasers able, ready and willing to buy and the sales were defeated through the fault of the owners. In the West Virginia case the purchaser refused to buy because the representations of the owner were not borne out by an examination of the property, and in the Tennessee case there was a substantial defect in the title. The question involved in the case at bar was not determinative of either of these controversies.

4. Plaintiff claims that as the assignment to it of a part of the sales contract left the collections wholly in the hands of Ferguson and Hamblet, plaintiff's rights are unaffected by the failure to collect the installments due from purchasers. A stream cannot rise higher than its source. We have seen that the contract pro-

vides only for a conditional payment of these commissions. Such being its effect as between the original parties, the stipulation for payment could not become absolute by the assignment to plaintiff.

5. Plaintiff's complaint contains no allegation that the fund to which plaintiff was to look for payment of the commissions claimed was adequate for such purpose and the finding of the lower court was that there was no fund applicable to such payment except $65.16. The testimony has not been attached to the bill of exceptions and we are therefore bound to assume that this finding is supported by competent proofs.

6. Plaintiff complains that the lower court refused to receive a number of specifications of evidence offered in plaintiff's case in chief. This testimony all went to support the plea of estoppel set up in the reply. The complaint failed to state facts sufficient to constitute a cause of action for the reasons above stated. The affirmative matter in the reply was material, therefore, only as tending to rebut the counterclaim pleaded in the answer. The testimony in support of these allegations of the reply could be received only in rebuttal and the court did not err in rejecting the proof as a part of plaintiff's case in chief.

7. In rebuttal plaintiff made the following offer:

"The plaintiff at this time offers to produce witnesses and prove that the cancellation of the contract —that all the cancellations of contracts which have been referred to in the case are the result of an interference by the Alameda Land Company in the way of dividing lots up among the stockholders prior to the expiration of the contract, throwing the same upon the market at prices away below the prices at which the Columbia Realty Company was authorized to sell the same; so that it was profitable for the purchasers to surrender the contracts and forfeit the moneys which they had paid upon the same, whereupon they

87 Or.—19

could repurchase the lots and still save money by doing so; and by the actual presence of stockholders upon the tract offering the lots at these reduced prices, some of the same lots which the Columbia Realty Company was trying to sell, and at a time prior to the expiration of their contract; that is, during the month of November, 1912.''

Defendant contends that an offer of proof cannot be made without calling a witness and asking an appropriate question. In support of this contention we are cited to: *Ralston* v. *Moore,* 105 Ind. 243 (4 N. E. 673, 675); *Smith* v. *Gorham,* 119 Ind. 436 (21 N. E. 1096, 1097); *Tobin* v. *Young,* 124 Ind. 507 (24 N. E. 121, 123); *Darnell* v. *Sallee,* 7 Ind. App. 581 (34 N. E. 1020, 1021); *Gray* v. *Elzroth,* 10 Ind. App. 587 (37 N. E. 551, 552, 53 Am. St. Rep. 400). These authorities are in point and they are supported by the opinion of Mr. Justice MOORE in *First National Bank* v. *Oregon Paper Co.,* 42 Or. 398, 402 (71 Pac. 144, 971). In this opinion it is said:

"If the appellants were not allowed to prove their claim, they should have called witnesses, and stated to the court the testimony which it was expected would be elicited from them.''

Plaintiff relies on this branch of the case on *Scotland County* v. *Hill,* 112 U. S. 183, 186 (28 L. Ed. 692, 5 Sup. Ct. Rep. 93). This case undoubtedly tends to support plaintiff's contention, but the offer of proof in that case was much more specific than in this. The name of the witness relied on was given and the precise testimony relied on was stated in the offer. In the case at bar no witness was named and the offer of proof was couched in the most general terms. We think that plaintiff should have named its witnesses and specified the acts of interference relied on. The

offer should have named the contracts of purchase which were canceled because of each act of interference by the defendant. Unless the calling of witnesses is waived by the court or by the adverse party, we think the better practice is to call the witnesses relied on and ask appropriate questions. If objections are sustained to these questions the time is ripe for an offer of proof. The court did not err in declining the offer in question.

8. Plaintiff's objection was not well taken to defendant's testimony showing that purchasers had failed to make their payments. It was competent for the defendant to prove by the witness Bosworth the practice of the defendant in canceling contracts held by purchasers who were unable to meet their obligations. We cannot say as a matter of law that these cancellations required formal action by the board of directors of the defendant.

9. It is finally contended that the lower court erred in refusing to make findings on some of the material issues raised by the pleadings. The court found that plaintiff had received all the commissions to which it was entitled except $65.16; that all the cancellations of contracts had been made as alleged; that the expense of such cancellations was $351.55, of which $309.26 was chargeable to plaintiff, and that all of these cancellations were necessary. These findings support a judgment in defendant's favor for $244.10. The finding that the cancellations were necessary negatives plaintiff's claim that the cancellations were due to defendant's unwarranted interference with the purchasers secured through plaintiff's efforts. The findings therefore determined the controversy and support the judgment. In such case the failure to make additional findings is not error: *Lewis.* v. *First Nat. Bank,*

### (168 Pac. 440.)

On petition for rehearing.    Denied.

*Mr. Loyal H. McCarthy* and *Mr. J. LeRoy Smith,* for the petition.

*Messrs. Fulton & Bowerman, contra.*