[R. & J. McLester v. Somerville & McEachin.]

# R. & J. McLester *v.* Somerville & McEachin.

## *Trover.*

1. *Crop lien; what necessary to constitute.*—An instrument acknowledging advances to make a crop, will not create the statutory lien, (R. C. § 1858,) unless it truly recites, substantially in the language of the statute, the facts upon which it gives the lien ; if the recitals be false, or do not come up to the requirements of the statute—as where it does not state the advance was obtained *bona fide.* &c.—the instrument will not create the statutory lien, though if it contain apt provisions for such a conveyance, it may operate as an ordinary mortgage.

2. *Same; word provisions, as used in.*—The word "provisions," as used in the statute, must be construed as meaning food and provender, for man and beast employed in making the crop, and does not include money or supplies to pay the hire of laborers, whether their work was to be paid for in money, clothing, or other supplies.

3. *Mortgage; what does not render fraudulent per se.*—Although a mortgage conveying crops, and reciting, in the language of the statute, that it was given to secure advances made in money, to enable the mortgagee to make a crop for the current year, and without which advance it would not be in his power to make a crop, &c.—was, in fact. made to secure an antecedent indebtedness; this of itself will not render it fraudulent and void as to existing creditors ; and although the instrument can have no efficacy to confer the statutory "crop lien," yet if made in good faith, without any intent to hinder, delay or defraud creditors, and properly recorded, it will take precedence over a subsequent mortgage upon the same property.

4. *Attorney's fees ; when recoverable as part of the damages in trover.*—Attorney's fees in prosecuting a suit to recover damages for the conversion of mortgaged property, as well as the principal and interest of the debt secured, are recoverable as part of the damages in trover, when the property converted and interest from the time of the conversion, equals or exceeds in value the debt, interest, and attorney's fees, and the mortgage expressly provides that the "proceeds of sale be first applied to attorney's fees, and all costs of collecting the amount due and expenses of the sale."

APPEAL from Circuit Court of Tuskaloosa.

Tried before Hon. W. S. MUDD.

This was an action of trover by Somerville & McEachin, the appellees, against R. & J. McLester, the appellants, to recover damages for the conversion of certain corn and cotton. Both parties deduced title from Caldwell & Durrett, under written instruments executed by them under the following circumstances : Caldwell & Durrett were partners, engaged in the business of planting, in Tuskaloosa county, during the years 1870, 1871 and 1872. In the year 1872, the partnership rented the "Caldwell place," and raised thereon in that year the cotton and corn in controversy.

On the 5th day of February, 1872, Caldwell & Durrett, executed a written instrument to Somerville & McEachin, which recited that Caldwell & Durrett "have received from Somerville & McEachin advances in money amounting to eleven hundred and twenty-five dollars, to enable us to make a crop for the year 1872, which we obtained *bona fide* for the purpose of making a crop as aforesaid, and without which we would not be able to obtain the necessary teams, provisions and farming implements to make said crop; and, whereas, we may receive further advances from said Somerville & McEachin, for the purpose aforesaid—Now, THEREFORE, in consideration of the premises, and the further sum of five dollars, to us in hand paid by said Somerville & McEachin, we hereby give the said payees the statutory lien on said crops, made by us the present year on the Caldwell plantation in said county, as provided by § 1858 of the Revised Code of Alabama, and bargain, sell and convey unto them and their heirs forever, the following property: All the crops made by us the present year on the Caldwell plantation in said county." This instrument provided, that Sommerville & McEachin might take possession of the crops and sell them, if the advances were not paid by the first day of January following, and apply the proceeds, first, to the payment of attorney's fees, and all costs of collecting the amount due and making the sale; and, secondly, in discharging the amount due for advances and interest, and any surplus remaining to be paid to Caldwell & Durrett. This instrument was properly acknowledged and recorded in Tuskaloosa county, on the 11th day of April, 1872.

The consideration of this instrument was shown to be as follows: In May, 1870, Somerville & McEachin loaned Caldwell & Durrett $1,000 in money, taking a mortgage and lien note on certain mules and stock owned by them, and also on the corn and cotton to be raised by them that year. In February, 1871, the lien of said instrument was released and the debt renewed, Somerville & McEachin taking a new mortgage and lien note, and allowing Caldwell & Durrett to retain the crop and mules. In January, 1872, Caldwell & Durrett were asked to make payment; and if the mortgage then existing had been foreclosed they could not have continued farming operations; but afterwards an agreement was made, by which Caldwell & Durrett were allowed to sell their cotton upon which Somerville & McEachin had a lien, and to renew the debt. This was done by the instrument of February 5th, 1872, the substance of which is set out above. There was testimony on the part of the appellees that these transactions were entered into in good faith, &c.

The plantation which Caldwell & Durrett cultivated in 1872, was rented from Mrs. S. L. Caldwell, administratrix of the estate of one John S. Caldwell, and they had executed a mortgage to her on all the crops raised that year, and the mules and stock, subject to existing liens, to secure the rent; it being expressly stipulated, however, that this was not to impair her statutory lien as landlord. The rent thus secured was $1,400, payable January 1st, 1875.

R. & J. McLester claimed title to the corn and cotton, under an instrument executed to them by Caldwell & Durrett, on the 1st day of May, 1872, and duly recorded on the 23d day of the same month. This instrument recited that Caldwell & Durrett were indebted to R. & J. McLester, in the sum of $2,901 98, due by promissory note, due January 1st, 1873; that the McLesters have furnished and agreed to furnish, Caldwell & Durrett "with supplies to enable them to make a crop, the present year, to the amount of $1,500, in addition to the amount due by said promissory note, which shall be due January 1st, 1873; that said supplies are furnished *bona fide* to enable said Caldwell & Durrett to make a crop the present year; and said Caldwell & Durrett being willing to secure to said R. & J. McLester the payment of said promissory note, and said sum of $1,500 supplies furnished, and to be furnished as aforesaid, &c. The instrument then conveys the stock, &c., and the crops to be raised that year, on the plantation, to secure the payment of the note and advances, and in default of payment authorized R. & J. McLester to enter and sell the crops and stock, &c.

It was shown that Caldwell & Durrett were largely indebted to R. & J. McLester for supplies furnished prior to January, 1872, and the note for $2,901 98 was given to close up the account. Early in January, 1872, R. & J. McLester verbally agreed to advance to Caldwell & Durrett the necessary provisions to make a crop for 1872, and the latter agreed to execute a mortgage on their stock, farming implements entire crop to be raised that year, to secure such advances and their prior indebtedness also. "The mortgage to R. & J. McLester, dated May 11th, 1872, was executed in pursuance of this understanding, and it was expressly understood that said mortgage was to be a crop lien on the crop to be grown in the year 1872." The McLesters furnished all the supplies Caldwell & Durrett used in making the crop of 1872, and without these supplies Caldwell & Durrett could not have cultivated the plantation. The amount advanced exceeded the $1,500 agreed on, because additional advances were necessary to finish the cultivation and gathering of the crops. The McLesters had no actual knowledge of the existence of

the mortgage to Somerville & McEachin, until after receiving and disposing of the property in controversy in this suit.

The supplies advanced in the year 1872, by the McLesters, were worth $2,657 05, and they introduced the account, showing the various supplies furnished. Many of the items of the account were for whisky, soap, tobacco, clothing, shoes, and other things usually furnished to farm laborers, as well as for corn, meat, &c.

In January, 1873, the appellees received from Caldwell & Durrett 27 bales of cotton, valued at $2,263 25, at its highest price, grown on the Caldwell plantation in 1872, and disposed of it, crediting the proceeds on the debt due by Caldwell & Durrett. They also received and disposed of some corn and fodder grown on the plantation the same year, but the testimony tended to show that this was bought from the landlord, to whom Caldwell & Durrett had delivered it in payment of rent, and the balance due on the rent was paid by the appellees, less $200, which was released.

The court charged the jury, in substance: 1st. That neither of the conveyances made by Caldwell & Durrett to Somerville & McEachin, or to R. & J. McLester, created any statutory lien on the crops, under the Revised Code. 2d. That these instruments could not be operative except as mere ordinary mortgages. 3d. That the mortgage to Sommerville & McEachin being first executed and recorded, had a prior lien on the crops of 1872 to that created by the mortgage to R. & J. McLester, unless shown to be void as to them. 4th. That the deed executed to Somerville & McEachin was void as to R. & J. McLester, if executed with intent to hinder, delay, or defraud creditors, and R. & J. McLester were creditors of Caldwell & Durrett at the time of its execution. 5th and 6th. If Caldwell & Durrett were, in fact, indebted to Somerville & McEachin, prior to the execution of the mortgage to them, and it was executed in good faith, without any intent to hinder, delay, or defraud creditors, the falsity of its recitals, as to the purpose for which it was made, would not of itself render it void, but that the jury might look to these facts, and the other evidence in the case, to determine that question. 7th. If the jury found the deed to Somerville & McEachin fraudulent and void, under the rule of law given them, their verdict must be for the defendants; otherwise, they should find for the plaintiffs. 8th. If plaintiffs were entitled to recover, the measure of damages would be the value of the crops conveyed by plaintiffs' mortgage, and converted by the defendants, at the time of its conversion. 9th. If the property converted, and interest thereon from the time of the conver-

sion, shall be more than enough. to pay off the amount secured by the deed to the plaintiffs, then the measure of damages would be the amount so secured, to be paid under said deed; and this amount would be the amount due on the debt to S. & M., and interest thereon to the present time, and the attorneys' fees, and other costs of collecting said sums and making the sale, and this would include attorneys' fees necessary to recover said property, or damages for the conversion thereof.

The appellants duly excepted to the giving of each of these charges.

The appellants requested the court, in writing, to charge the jury as follows: "4. If the jury believe, from the evidence, that said McLester paid to the landlord, Mrs. Caldwell, the sum of $1,200, for rent of said plantation, known as the Caldwell plantation, cultivated by said Caldwell & Durrett as her tenants, and that he furnished all the supplies to make the crop of 1872, then said Somerville & McEachin can not recover of said McLester any part of the proceeds of the crop grown by said Caldwell & Durrett on said plantation, unless there is a surplus in his hands after he has been.paid for said advances, and for said rents."

The court refused to give this charge, and the appellants duly excepted, as also to the refusal to give other charges, asserting, in substance, the converse of the propositions of law declared in the charges given by the court. There was a verdict and judgment for the plaintiffs.

The various rulings to which exceptions were reserved are now assigned as error.

VAN HOOSE & POWELL, for appellants.

LEWIS & HARGROVE, contra.

MANNING, J.—The lien for advances to make crops—generally called "the crop lien"—provided for by section 1858 of the Revised Code, "shall have preference of all other liens, except that for the rent of land." This is expressly declared in the enactment. The lien takes priority over older liens not of the same nature, though previously obtained by mortgages, or other solemn instruments.

A statute which has this effect must be strictly construed; and the instrument by which the lien is created, must be conformed to all its essential requirements. When the law takes pains to declare that the advances to enable a crop to be made, for which a party may have on it this extraordinary lien, are "advances in horses, mules, oxen, or necessary pro-

visions, farming tools and implements, or money to purchase the *same*." we are not at liberty to add any other article to those so specified. This view is confirmed by the subsequent clause of the same section, in which these same things are referred to more concisely as the "necessary team, provisions and farming implements;" the word *team*, embracing "horses, mules and oxen," and farming implements, "farming tools and implements."

Other things, doubtless, there may be indispensable to the making of the crop. Laborers may be required to control the "horses, mules and oxen," or to use the "tools and implements." Yet, obvious as this must have been to the legislature, they did not include among the things for which the benefit of such a lien would be allowed, money for the purchase of labor, or to pay the hire of laborers, whether such hire was to be paid in cash, or with clothing or other *supplies*. The word "provisions," used in the statute, must be understood in the sense in which it is generally employed, especially on plantations, or in reference to their being used thereon, as meaning food and provender for men and beasts, and not in the broader signification which in some connections it will bear. For any other articles, as well as for those mentioned in section 1858, a mortgage on the crop to be grown, or on any other property of the mortgagor, may be executed; but the lien it creates will have priority over others only according as it may be older, or as it may obtain advantage over them by being duly recorded. Any thing else that may be required for the making of a crop, besides those mentioned in the statute, must be procured otherwise by the person needing them. He can not, for them, give a lien which shall have the privilege of precedence that is accorded to a crop lien.

The note or obligation given to create the lien must, moreover, contain a declaration that the things or thing advanced, or moneys advanced to purchase the same, were obtained by the person procuring them, "*bona fide* for the purpose of making a crop—and that, without such advance, it would not be in the power of such person to procure the necessary team, provisions and farming implements to make a crop." Without a substantial compliance with these terms and conditions prescribed by law, the instrument can not operate to create a crop lien. But it may be valid as an ordinary mortgage, if framed to have that effect, whether given for the articles mentioned in the statute or any other.—*Gafford v. Stearns*, 51 Ala. 434.

According to these views of section 1858, neither of the

instruments executed by Caldwell & Durrett, to the parties to this suit, creates a privileged crop lien. That to Somerville & McEachin does not, because none of the articles specified, or money to buy them, to enable a crop to be made, was advanced by them in the year 1872. This is proved and admitted. And the instrument to the defendants, R. & J. McLester, does not create a crop lien, because it speaks only of "supplies" furnished and to be furnished, without specifying of what class these supplies were; and when we come to look into the account of them, we see at once that a very large portion were not of the kind mentioned in the statute.

Both instruments, however, are framed so that they may be operative as common mortgages, supposing them to be free from fraud. There is no imputation of this against the deed made to appellants, the McLesters. Respecting that to Somerville & McEachin, the question of fraud, or not, was fairly submitted upon proper instructions by the circuit court to the jury; who, by their verdict, determined it in favor of appellees, the plaintiffs below. And they, having the older and first recorded of the two instruments, are entitled to have the debt it provided for first discharged.

We think there was no error in the charges given by the circuit judge to the jury. In some particulars, one or two of them might have been advantageously explained by additional instructions, if such had been requested.

The measure of damages was not incorrectly stated—the expenses of collection having been expressly provided for in the mortgage to plaintiffs below.—See *Harbinson v. Harrell,* 19 Ala. 753, 759.

The fourth instruction requested by defendants and refused, which relates to the corn, &c., obtained of Mrs. Caldwell, the lessor for the rent due to her, did not present the question in regard to that matter, separately from defendant's claim of priority for their advances, and was, therefore, properly refused.

According to the view we have taken of the rights of the parties, there was no error in the refusal by the court to give the other instructions asked by defendants below, and its judgment is affirmed.