---

Sᴍɪᴛʜ vs. Kᴏɴsᴛ and another.

*October 14 — November 10, 1880.*

Tʀᴏᴠᴇʀ.   *(1) Proof of different title in plaintiff from that alleged.   (2) Estoppel.*

1. In an action for the unlawful taking and conversion of goods, against an officer who has taken them as property of X., where the complaint, after alleging a mortgage of the goods to plaintiff and default thereon, also alleges a delivery of them to plaintiff by the mortgagor in satisfaction of the mortgage debt, there is no error in permitting plaintiff to make proof of his title *simply as mortgagee.*
2. X. was a tenant of said officer's codefendant W.; and there was evidence that W. was induced to permit X. to become such tenant, instead of plaintiff, by plaintiff's assurance that he would let X. have the goods in question, *taking back a mortgage thereof like that actually given,* and that if the mortgage was not paid, plaintiff "would go back into the place."   *Held,* that these facts do not *estop* plaintiff from denying X.'s title to the goods in this action.

APPEAL from the Circuit Court for *Racine* County.

Defendants appealed from a judgment for the plaintiff. The case is sufficiently stated in the opinion.

Brief for the appellants by *S. & A. S. Ritchie*, and oral argument by *A. S. Ritchie.*

*Wm. Crosten*, for the respondent.

TAYLOR, J. This is an action to recover the value of certain personal property which the respondent claims to own, and which, he alleges, was unlawfully taken and converted by the appellants.

The respondent claimed title to the goods by virtue of a chattel mortgage given to him by one Frank P. Riley, to secure a debt due to him from said Riley amounting to the sum of $200 and interest thereon. The evidence clearly shows that Riley owned the property, and mortgaged the same to the respondent to secure the payment of the said $200. The respondent also claimed that, shortly before the appellants took and converted the property, Riley had delivered the same to him in satisfaction of the mortgage, and that by such delivery he became the absolute owner of the property at the time it was taken by the appellants. The appellants seized the property on an attachment in favor of the appellant *Jane A. Warner* against one Samuel D. Potts, who had been in the possession of the mortgaged property for some time previous to the seizure, claiming under Riley, but subject to the mortgage of the respondent. Potts was the tenant of *Jane A. Warner*, and the attachment was issued to recover rent due from Potts for the use of the building in which said personal property was kept and used by Potts.

There was no contest as to the *bona fides* of the claim of the respondent to the property under his mortgage from Riley. The appellants appear to have relied upon two points as a defense to respondent's action: *First*, it was insisted that because the respondent had alleged in his complaint that Riley

had delivered the property to him in satisfaction of his mortgage, and that thereby he became the absolute owner thereof previous to the conversion by the appellants, he could not recover unless he established that fact on the trial; that if he failed to establish that fact, he could not recover on the strength of his title as mortgagee. Several exceptions taken to the instructions given and refused are based upon this theory of the case. The objection to the introduction of the chattel mortgage in evidence on the part of the respondent, is also founded upon this theory. We do not think this point well taken. The respondent, as mortgagee, after condition broken, had the legal title to the property; and the right to the possession thereof, against everybody; and his right to recover against any person unlawfully converting the same in hostility to his rights as mortgagee, was just as perfect as if he had been the absolute owner thereof; the only difference being that, as against persons claiming under the mortgagor or his assignees, his right to damages would be limited to the amount due upon his mortgage, and not the value of the property, if such value exceeded the amount so due. It was not error, therefore, to refuse to instruct the jury as requested by the appellants, that if they found that Riley had not transferred the property to the respondent in satisfaction of his mortgage, their verdict should be for the appellants.

The other point made by the appellants on the trial and in this court is, that the respondent was estopped as to the appellant *Jane A. Warner* from asserting or claiming that the property in dispute was not the property of Potts, her tenant, at the time the attachment was levied. This is the only affirmative defense set out in the answer. The appellants make no claim in their answer that the mortgage of the respondent was not given in good faith for a valuable consideration, nor that it was given or held with intent to hinder, delay or defraud the creditors of the said Potts. The only evidence offered by the appellants to establish this claim of an

estoppel, as against the respondent and in favor of the appellant *Jane A. Warner*, is the evidence of Herman Warner, her husband and agent. He testified substantially that, previous to taking Potts as the tenant of *Jane A. Warner*, the respondent was her tenant; that respondent came to the witness and said he had heard witness was not going to let Potts into the house; that he, *Smith*, had got a chance to sell, for a good price, and wanted witness to let him sell to Potts and release him; that Riley was going to assist Potts by letting him have a mortgage of $300, and that he, *Smith*, would take a mortgage back from Potts for $200; that he should board there and perhaps take it all out in board; if not, and Potts did not pay according to the terms, he should foreclose the mortgage and go back himself, and witness would be sure of the rent; and that upon the strength of this statement he let Potts into possession, and looked to him for the rent. On his cross examination the witness said: "*Smith* made no representation that would induce me to look to him or his property for the rent of the premises. I did not rely on anything of that kind in renting to Potts. I relied on *Smith's* word that he would go back into the place if his mortgage was not paid."

There is certainly nothing in this statement which should prevent *Smith* from setting up his claim to this property under his mortgage. The appellant's agent knew, before he accepted Potts as her tenant, that the property which was to be used by him on the premises was to be subject to the respondent's claim for $200. There is no pretense made by the witness that this claim should be subjected to a prior right of *Mrs. Warner* to apply the same to the payment of her rent. The witness expressly denies that there was any such understanding between him and *Smith*. He says: "I rented Potts the place on the promise of *Smith* that if Potts did not pay the mortgage he would go back into the place himself." Taking the statement of the witness Warner as to what was said by *Smith* to induce him to rent the premises to Potts, as true,

*Smith*, perhaps, made a false statement as to his intention of selling the property to Potts, as it appears he did not sell to Potts, but to Riley, and took the mortgage from Riley instead of Potts. But Riley and Potts seem to have been jointly interested in the purchase from *Smith*, and in the business, as appears from the evidence. This false statement could not operate in favor of *Mrs. Warner*, to destroy the respondent's claim upon the property for the amount of his mortgage. As there was no concealment of the fact that he was to have such claim upon the property when Potts became the tenant of *Mrs. Warner*, she is not in a position to assert that she relied upon Potts becoming the absolute owner of the property, as against *Smith*, for the security of her rent. In order to estop the respondent from claiming this property as his, against the claim of the appellant *Mrs. Warner* for her rent, it was necessary for her to show that the respondent had represented that Potts was the owner of the property, or at least that he should become the owner immediately upon her accepting him as her tenant, and that upon the strength of such representation she let him into possession as her tenant. No such representation is proved in the case. On the other hand, it is clearly proven that *Mrs. Warner* knew, at the time she accepted Potts as her tenant, that the property was mortgaged to *Smith* for $200, which he expected to hold and enforce against the same, notwithstanding Potts became her tenant.

We do not think the record discloses any errors committed upon the trial in the court below.

*By the Court.*— The judgment of the circuit court is affirmed.