Argued at Pendleton October 27, 1925, affirmed January 26, 1926.

# MARGARET EADE ET AL. *v.* FIRST NATIONAL BANK OF CONDON.

: (242 Pac. 833.)

**Chattel Mortgages — Complaint Held to Allege Sufficient Special Ownership to Maintain Action for Conversion of Mortgaged Property.**

1. Complaint, alleging execution of notes and mortgages, plaintiffs' ownership thereof, default in payment, priority over other liens, and conversion and sale of mortgaged property by defendant bank, alleged facts showing sufficient special ownership and right of possession, in view of Section 10183, Or. L.

**Pleading—Complaint, Alleging Chattel Mortgages are First Liens, Held not Defective After Verdict.**

2. Complaint, alleging that chattel mortgages are first liens upon personal property therein described and alleged to have been converted, *held* not defective as not disclosing terms and conditions of mortgages; complaint being entitled to every reasonable intendment after verdict.

**Chattel Mortgages—Not Necessary to Allege and Prove Demand and Refusal to Deliver Mortgaged Property Sold by Defendant.**

3. In action for conversion of mortgaged property sold by defendant bank on foreclosure of junior mortgagee, it was not necessary to allege and prove demand and refusal to deliver chattels.

**Chattel Mortgages—Selling Mortgaged Property on Foreclosure Without Applying Proceeds to Superior Liens of Prior Mortgages is Conversion.**

4. A mortgagee, selling mortgaged property on foreclosure without applying proceeds to satisfaction of mortgages constituting superior liens, was guilty of conversion whether it acted in good faith or not.

**Trover and Conversion—Attorney's Fees not Element of Damages.**

5. Ordinarily, measure of damages is value of property taken at time and place of conversion, and attorney's fees are not recoverable.

**Chattel Mortgages—Junior Mortgagee Liable to Senior Mortgagee Only for Value of Property Converted.**

6. Junior mortgagee is liable to senior mortgagee only for value of property converted by former, not exceeding amount of prior lien.

---

4. Liability as between junior and senior mortgagee for conversion by other, see note in Ann. Cas. 1916A, 867.

Chattel Mortgages—Mortgagee Held Entitled to Recover Attorney's Fees, Provided for in Notes Secured, in Action for Conversion by Junior Mortgagee.

7. Where mortgages were given as security for attorney's fees provided for in notes, as well as for amount due thereon, mortgagee may collect such fees in action for conversion of mortgaged property by junior mortgagee, who sold it on foreclosure, thereby rendering it futile to foreclose senior mortgages.

Chattel Mortgages, 11 C. J., p. 556, n. 77, p. 591, n. 58, p. 606, n. 63, p. 611, n. 71 New, 77, p. 615, n. 37 New, p. 619, n. 33, 36.
Trover and Conversion, 38 Cyc., p. 2033, n. 84, p. 2068, n. 5, p. 2071, n. 17, p. 2078, n. 77, p. 2094, n. 60, 61, p. 2101, n. 99.

From Gilliam: FRED W. WILSON, Judge.

In Banc.

This is an action to recover damages for conversion of personal property alleged to have been included in two chattel mortgages owned by plaintiffs. The cause arose as follows: On December 1, 1920, W. I. Ebbert, who is in default and not a party to this appeal, executed and delivered to each of the plaintiffs a promissory note for $500, due one year after date, bearing interest at the rate of 10 per cent per annum, and containing the usual agreement to pay reasonable attorney's fees in the event suit or action should be instituted to collect the amount due thereon. These notes were secured by two chattel mortgages of even date covering certain livestock. Plaintiffs' respective mortgages were duly filed and recorded in Gilliam County, Oregon, on December 6, 1920. After averring the ownership of the notes and that no part of the amount due thereon has been paid, plaintiffs charge the defendant bank with having converted to its own use the property covered by the chattel mortgages to their damage in the sum of $2,600. It is alleged in the amended complaint that $100 would be reasonable attorney's fees for the collection of each note. Defendant admits the execution of the notes

and mortgages, but denies generally the other allegations of the amended complaint, and affirmatively alleges special ownership in the property in question by virtue of a chattel mortgage executed and delivered by the same mortgagor September 27, 1921; that the conditions of the mortgage having been broken, the bank instituted foreclosure proceedings and sold the property at public sale to satisfy the amount due it. During the trial it was stipulated, in the event of recovery by plaintiffs, the measure of damages would not be the value of the property included in the chattel mortgages, but the amount due on the notes. Counsel for appellant also stipulated, without waiving his objection to the allowance of attorney's fees herein, that $200 would be a reasonable fee if it were a proper element of damages. A verdict was returned in favor of plaintiffs for $1,602,77, being principal and interest on the notes and including the sum of $200 as attorney's fees. Defendant appeals.                                   AFFIRMED.

For appellant there was a brief over the name of *Mr. Charles H. Horner,* with an oral argument by *Mr. Frederick Steiwer.*

For respondents there was a brief over the names of *Messrs. Huntington, Wilson & Huntington* and *Mr. J. D. Weed,* with an oral argument by *Mr. B. S. Huntington.*

BELT, J.—1. At the beginning of the trial defendant objected to the introduction of any testimony for the reason that the amended complaint failed to allege facts sufficient to constitute a cause of action in conversion. It is contended that such pleading does

not aver ownership and right of possession in plaintiffs to the property in controversy at the time of the alleged conversion. There is no merit in this contention. Relative to the matter of ownership and right of possession, the complaint alleges the execution of the notes and mortgages on December 1, 1920; that plaintiffs are the owners thereof; that there has been a default in payment of the amount due thereon; and that the mortgages are a first lien on the property under consideration. It is also alleged that the bank converted to its own use all of the property included in said mortgages and "sold and disposed of the same to divers persons, who have carried it away to places to plaintiffs unknown." Section 10183, Or. L., provides:

"Whenever the condition of any mortgage of goods and chattels shall be broken, the mortgagee shall be entitled to the immediate possession of the mortgaged property, and when after breach of the condition of any such mortgage the possession of the mortgaged property shall not be delivered up to the mortgagee upon demand by him or by any person duly authorized by him to make such demand of the person or persons having such mortgaged property in possession, the mortgagee may recover the possession of such mortgaged property in the manner provided by chapter II of Title IV of the Code of Civil Procedure."

Plaintiffs, by virtue of their chattel mortgages and breach of conditions thereof, had sufficient special ownership in the property to maintain this action. In Bower's Law of Conversion, Section 490, it is said:

"An allegation that a person executed and delivered to plaintiff a chattel mortgage on the chattels involved was held sufficient without also averring generally that plaintiff owned the property or that the

mortgagor owned it or had an interest in it."—citing *Brunswick Balke-Collender Co.* v. *Brackett,* 37 Minn. 58 (33 N. W. 214), which supports the text.

Plaintiffs' right to the immediate possession of the chattels follows by reason of their special ownership therein and by force of the above statutory provision. An allegation of right to immediate possession would seem superfluous since the statute gives such right whenever the conditions of the mortgages shall have been broken. It should be borne in mind that the primary object of this action is to recover damages and not possession of the property.

2. It is contended that the complaint is defective in that the terms and conditions of the mortgages are not disclosed. After verdict the complaint is entitled to every reasonable intendment, and we think it would be sacrificing substance for form to hold in keeping with such contention. It is alleged in the complaint, and the proof establishes, that the chattel mortgages are first liens upon the personal property therein described.

3. It is also argued that plaintiffs should have alleged and proved a demand upon the bank and its refusal to deliver the chattels to them. This contention is answered adversely to appellant in *Daniels* v. *Foster & Kleiser,* 95 Or. 502 (187 Pac. 627), wherein Mr. Justice HARRIS, speaking for the court, said: "Where a conversion has actually occurred, there is no necessity of alleging and proving a demand and refusal"—citing Cobbey on Replevin, § 449; *Rosenau* v. *Syring,* 25 Or. 386 (35 Pac. 845); *Caples* v. *Ditchburn,* 87 Or. 264 (169 Pac. 510). In the light of the facts in this case it would, indeed, have been an idle and vain thing to have demanded a return of the property.

4. The act of the bank in selling the mortgaged property in disregard of plaintiffs' superior liens constituted conversion, and it is immaterial whether in doing so it acted in good faith. Its alleged wrong did not consist in undertaking to foreclose its mortgage, but in failing to apply the proceeds of the sale to plaintiffs' superior liens. Bower's Law of Conversion, Section 128, tersely states the rule thus:

"A junior mortgagee is liable in trover to the senior mortgagee if he take the property from the latter and sell it without regard to his rights."

5, 6. The interesting question involved in this appeal is whether plaintiffs are entitled to recover attorney's fees herein. Under the general rule such would not be an element of damages in an action for conversion. Ordinarily, the measure of damages is the value of the property taken at the time and place of conversion: *Garber* v. *Bradbury*, 106 Or. 490 (209 Pac. 477); *Backus* v. *West et al.*, 104 Or. 129 (205 Pac. 533); *Montesano Lum. & Mfg. Co.* v. *Portland Iron Works*, 94 Or. 677 (186 Pac. 428); *Swank* v. *Elwert*, 55 Or. 487 (105 Pac. 901). However, in a contest between two mortgagees the junior mortgagee is liable only for the value of the property converted, not in excess of the amount of the prior lien: *Harris* v. *Grant*, 96 Ga. 211 (23 S. E. 390); *Stanley* v. *Citizens' Coal & Coke Co.*, 24 Colo. 103 (49 Pac. 35); *Barron* v. *San Angelo Nat. Bank* (Tex. Civ. App.), 138 S. W. 142; Jones on Chattel Mortgages (5 ed.), § 448; Bower's Law of Conversion, § 681. The stipulation in this case relative to the measure of damages is in keeping with such rule.

7. We should not be unmindful that the mortgages executed were given as security to plaintiffs not only for the amount due on the notes, but for at-

torney's fees therein provided: *First Nat. Bank of
Stigler* v. *Howard,* 59 Okl. 237 (158 Pac. 927). The
bank's alleged tortious act in selling the property and
causing the same to be scattered to the four winds,
resulted in destroying plaintiffs' security. It would
have been futile for plaintiffs to have instituted fore-
closure proceedings, as execution upon the property
was impossible. It became necessary to seek other
relief. They were compelled to sue defendant to
satisfy their liens. While the proceeding is in the
form of conversion, it is equivalent to an action to
collect the amount due on the notes, and the stipula-
tion therein contained concerning attorney's fees
must be given force and effect. Otherwise stated,
plaintiffs are entitled to as much relief in this action
as they would have been in foreclosure proceedings,
had it not been for the alleged wrongful act of the
bank. It is true that the bank after the sale could
have satisfied plaintiffs' liens by paying the amount
due on the notes, and, under such circumstances,
would not have been liable for attorney's fees. How-
ever, we are not concerned with what defendant might
have done. This action arises out of what it did. It
deprived plaintiffs of their security covering at-
torney's fees as well as principal and interest. Why
should it not respond for such damages as are the
direct and proximate result of its alleged wrongful
act? The question is of first impression in this
state, and we are not aided by the decisions of many
courts—in fact, there is a surprising dearth of au-
thority on the precise point under consideration; but
the rule announced in *De Costa* v. *Comfort,* 80 Cal.
507 (22 Pac. 218), impresses us as sound. In that
case the mortgagee commenced an action in conver-
sion and the question of allowing attorney's fees was

squarely at issue. It was held that such was an element of damages, the court saying:

"The appellant contends that, the action being for a tort, the plaintiff could not recover the attorney's fee, nor the interest from the time of the alleged conversion. We think otherwise. The property taken by the appellant was subject to the payment of the full amount due on the mortgage, and he having converted the same to his own use must be held personally liable for the same amount. It would be a strange doctrine that would allow the mortgagor to relieve his property of a part of the debt for which he has pledged it by smuggling it into the hands of a third party, and that such third party could escape liability for the full amount by saying that his taking of the property was in the nature of a tort."

In support hereof, see, also, *R. & J. McLester* v. *Somerville & McEachin,* 54 Ala. 670; *Maddox et al.* v. *Dunklin,* 163 Ala. 278 (50 South. 277).

38 Cyc. 2101, and cases cited under note 99, are relied upon by appellant; but an examination of such cases discloses that none of them concern the right of a mortgagee to recover damages for impairment or destruction of his security. All cases cited under the above note, with the exception of *Berry* v. *Ingalls,* 199 Mass. 77 (85 N. E. 191), support the text in its statement of the general rule, but the case at bar must be considered in the light of its particular state of facts. It comes within the exception to the general rule.

Other assignments of error are not deemed of importance.

The cause was submitted to the jury under appropriate instructions covering the respective theories of the parties, and its findings in reference thereto should not be disturbed. It follows that the judgment of the lower court is affirmed.    Affirmed.

BURNETT, J., Dissenting.—This is an action wherein the plaintiffs, as chattel mortgagees, claim from the First National Bank of Condon $2,600 damages for an alleged conversion of certain personal property to its own use by the defendant bank. W. I. Ebbert was also made a defendant but nothing is said in the complaint about him except that he executed the notes and chattel mortgages mentioned therein, upon which the plaintiffs rely. He is not accused of participating in the conversion of property of which they complain. There is no prayer for any relief as against him and he made no defense. It is not apparent why he was joined as a defendant.

Instead of alleging in general terms, as they might have done under the case of *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564), that they were the owners of and entitled to the possession of the personal property involved at the commencement of the action, the plaintiffs chose to aver that the defendant, Ebbert, on December 1, 1920, gave to each of them his promissory note of that date for $500, due in one year, with interest at 10 per cent per annum, each of which notes contained the following clause:

"And in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute, such additional sum, in like Gold Coin as the Court may adjudge reasonable, for attorney's fees to be allowed in said suit or action."

The complaint further alleges in the first count:

"That at the same time and to secure the payment of said promissory note, said W. I. Ebbert executed and delivered to said Edna Wilkins his certain chattel mortgage, wherein he mortgaged to her the following described personal property, to wit": set down

as "20 head, more or less, of grade Belgian work horses, being all of the work horses then broken and owned by the mortgagor," and "7 head of registered Shorthorn cattle, being all of the registered cattle owned by said mortgagor at the date of said mortgage,"

and kept on the farm of the defendant Ebbert in certain sections, townships and ranges of the Willamette Meridian. There are like allegations in a second count, based on a note and mortgage given to the plaintiff, Margaret Eade.

It is said that no part of either note has been paid, that there was due thereon $500 with interest at 10 per cent per annum from its date, and the payee therein named is still the owner. It is further stated:

"That $100 would be a reasonable attorney's fee in any suit or action instituted to collect said note."

It is to be observed that this allegation is not that it would be or is a reasonable attorney's fee in this action, nor that it had been adjudicated as a reasonable attorney's fee in any other action commenced to collect the notes.

The execution, filing for record and indexing of the mortgages are averred. As charging the defendant bank, it is said:

"That subsequent to the execution, recording and indexing of said mortgages the defendant, First National Bank of Condon, Oregon, took, seized and converted to its own use all of the following described property, which was included in and covered by the said mortgages to the plaintiffs, Edna Wilkins and Margaret Eade, to wit":

mentioning in detail certain livestock said to be in the aggregate of the value of more than $2,600. The terms and conditions of the mortgage are not stated in any way further than has already been set forth

herein. There is no direct averment that the plaintiffs were the owners or entitled to the possession of the property at the time of the alleged conversion.

In an affirmative answer the defendant claimed to be entitled to the possession of the personal property described in the complaint by virtue of a chattel mortgage upon the same given to it by the defendant Ebbert on September 27, 1921, and recorded on that date in the office of the county clerk of Gilliam County. A copy of the mortgage is attached to the answer as an exhibit, and made a part thereof, from which it appears to be given to secure the payment of a demand note for $5,161.89, given to the bank on that date by Ebbert. The mortgage to the bank is conditioned to the effect, among other things, that the mortgagor will not mortgage, sell, waste, neglect or otherwise dispose of the property, or if he does so or fails to pay the note the bank is empowered to foreclose the mortgage by directing the sheriff of the county to seize and sell the property as upon execution against personal property and to apply the proceeds in payment of the expenses of seizure and sale, of the principal and interest on the note, together with reasonable attorney's fees for such foreclosure, the overplus, if any there be, to be paid to the mortgagor Ebbert. It is said in the appellant's brief:

"It was understood at the time of the trial that the new matter in the answer should be considered as denied by the plaintiffs,"

but otherwise there is no reply to this answer disclosed by the record.

After issue joined between plaintiffs and the bank, a trial was had before a jury. At the opening of the case the defendant bank objected to the giving of any testimony on behalf of the plaintiffs on the

ground that the complaint does not state facts sufficient to constitute a cause of action, but the objection was overruled. Over the exception and objection of the defendant bank, the court instructed the jury that in case it found for the plaintiffs the measure of damages would be the amount of the two notes of $500 each, together with interest thereon from December 1, 1920, at the rate of 10 per cent per annum, and the further sum of $200 as attorney's fees. In this connection, as to attorney's fees, it was stipulated that if any attorney's fees at all were to be allowed in the instant case, $200 would be a reasonable sum. The defendant bank, however, contested that item, claiming that no allowance whatever should be made in this action on that account. A verdict having been returned in favor of the plaintiffs and against the bank for a sum of money including $200 as attorney's fees, a judgment was rendered thereon against the defendant bank, and it has appealed.

This is an action in the nature of trover and conversion in which it is necessary for the plaintiffs to show by their complaint that at the commencement of the action they were the owners of and entitled to the possession of the property: *Hunt* v. *First National Bank of Halfway,* 102 Or. 398 (202 Pac. 564). Of course the ownership may be a qualified one but it is essential that the plaintiffs have and aver some property in the chattels involved together with the right to immediate possession. The only hold they have upon the property is that averred in their complaint. As stated it would have been competent for the plaintiffs to have alleged the ultimate fact that at the commencement of the action they were the owners and entitled to the possession of the property here involved, but they have not done so. They have undertaken to set out the probative facts from which, what

they might have alleged would be drawn as a legal conclusion. Having employed the former method of pleading, it is incumbent upon them to set out all the facts. In this connection Section 10183, Oregon Laws, is here set down:

"Whenever the condition of any mortgage of goods and chattels shall be broken, the mortgagee shall be entitled to the immediate possession of the mortgaged property, and when after breach of the condition of any such mortgage the possession of the mortgaged property shall not be delivered up to the mortgagee upon demand by him or by any person duly authorized by him to make such demand of the person or persons having such mortgaged property in possession, the mortgagee may recover the possession of such mortgaged property in the manner provided by chapter II of Title IV of the Code of Civil Procedure."

All that is stated in the complaint about the terms of the mortgage is:

"That at the same time and to secure the payment of said promissory note said W. I. Ebbert executed and delivered to said Margaret Eade his certain chattel mortgage, wherein he mortgaged to her the following described personal property."

It is believed that no one would contend that it would be sufficient in framing a chattel mortgage merely to say that, "I, W. I. Ebbert, mortgage the following described personal property to Edna Wilkins." No condition is mentioned in the complaint whereby the plaintiffs would ever be entitled to the possession of the property. To work out that result the plaintiffs are compelled to rely upon the statute just quoted. That enactment, in respect to chattel mortgaged property, constitutes a special statutory situation in which a plaintiff must place himself by

averment before he can recover the property or be entitled to maintain trover concerning it. It is said on the authority of *Brunswick-Balke-Collender Co.* v. *Brackett,* 37 Minn. 58 (33 N. W. 214), that an averment that A "mortgaged" the property is some indication that A was the owner. No one disputes that. All admit here that Ebbert, the mortgagee, was the owner. So to speak, he was the common grantor. The question here to be considered is whether the complaint shows that the plaintiff was the owner of the property or entitled to its possession. The section above quoted specially treats of chattel mortgages in this connection. There are two elements in that section which must be complied with before the mortgagee is entitled to recover the property. The first is a breach of the condition of the mortgage, and the second is a refusal to surrender possession of the property to the mortgagee *on demand.* The conditions of the plaintiff's mortgage are not revealed by the complaint and hence no one can say that there has been a breach of them so as to allow a recovery of possession. Who can say that they have been broken when no one knows what they are? To say that they have been broken without more, is but to state a conclusion of law, giving the court no data upon which to base the correctness of that conclusion.

Further, there is no demand for recovery of possession, and no testimony on that subject. Hence the complaint does not, in either of the two conditions mentioned, comply with the statute governing the situation and without a right to recover possession under the statute at the commencement of the action, trover will not lie. In brief, the plaintiffs have not shown themselves to be owners of or entitled to the possession of the property, either by direct averment

or by the allegation of sufficient probative facts to serve as a substitute for the direct averment.

*Daniels* v. *Foster & Kleiser,* 95 Or. 502 (187 Pac. 627), has been cited as dispensing with a demand for the possession of the property. That was a case where the plaintiff was suing in trover for the demolition of a building of which he claimed to be the owner. There was no question there about chattel mortgages and the necessity of a demand to break up what is a rightful possession of the mortgagor and junior claimant under him. In the self-same case Mr. Justice HARRIS said:

"If a person is rightfully in possession of the property of another, and is neither asserting title to it nor exercising such dominion over it as is inconsistent with the right of the owner, then ordinarily a demand must be made for the property, followed by a refusal to deliver, in order to work a conversion; for in such a case, there is no conversion until there is a demand and refusal and a demand ordinarily becomes necessary before the rightful possession is transformed into a wrongful possession."

*Rosenau* v. *Syring,* 25 Or. 386 (35 Pac. 845), and *Caples* v. *Ditchburn,* 87 Or. 264 (169 Pac. 510), are not in point because in neither of them was the question of chattel mortgages involved.

The statute puts into a special classification the elements of property in mortgaged chattels and makes necessary certain steps which we are not authorized to disregard in the transfer of title and exercise of ownership over such property, and in turning what was a rightful possession into the wrongful possession essential to the maintenance of replevin or trover.

There is a class of cases which treats a chattel mortgage as a transfer to the mortgagee of the abso-

lute title to the property, subject of course to the right of redemption in the mortgagor.   Such a case is *Lowe* v. *Wing,* 56 Wis. 31 (13 N. W. 892), cited as supporting an excerpt from Section 128 of Bower's Law of Conversion, reading thus:

"A junior mortgagee is liable in trover to the senior mortgagee if he takes the property from the latter, and sell it without regard to his rights."

The *Lowe* v. *Wing* opinion cites, in support of its conclusion, *Smith* v. *Konst,* 50 Wis. 360 (7 N. W. 293), quoting therefrom thus:

"The respondent as mortgagee, after condition broken, has the legal title to the property, and the right to the possession thereof against everybody; and his right to recover against every person unlawfully converting the same in hostility to his rights as mortgagee was just as perfect as if he had been the absolute owner thereof."

In applying this quotation to the instant case it is apposite to inquire what condition of the mortgage upon which the plaintiffs rely has been broken so as to let the plaintiffs into the absolute title to the property.   In considering the complaint this question cannot be satisfactorily answered unless the conditions are set out so we may know what they are.   It is not necessary to pursue further the question about who is the owner of chattel mortgaged property, for we read in *Williams* v. *Gallick,* 11 Or. 337 (3 Pac. 469):

"The interest of a pledgor in property pledged, with limited power of sale for the protection of the pledgee, may be levied upon and sold under an execution against the pledgor.   The pledgor holds the legal title to the property pledged and not merely an equitable interest."

Also in *Knowles* v. *Herbert,* 11 Or. 54 (4 Pac. 126), it is said that prior to foreclosure and sale a mortgagee of chattels has no property in them. "The property in such cases is in the mortgagor." In passing, it may be remarked that the property not being subject to attachment or execution against the mortgagee prior to foreclosure and sale, it is difficult to see how he could maintain replevin or trover for the same without bringing himself by an appropriate averment within the terms of the special statute upon that subject. Likewise, in *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976, 73 Pac. 342), Mr. Chief Justice MOORE wrote thus:

"The execution of a chattel mortgage, though in the nature of a sale upon condition, creates a mere lien upon the property, hypotheticated to secure the payment of a debt or the performance of some duty. * * As a corollary from the legal principle thus announced, it follows that the mortgagor retains such a title to the property mortgaged that he may sell or further incumber it."

In *Swank* v. *Elwert,* 55 Or. 487, 495 (105 Pac. 901), the doctrine was thus laid down by Mr. Justice SLATER:

"When, however, the mortgagee of chattels, after condition broken, secures possession of mortgaged property, the mortgagor's title is not extinguished, but continues until the lien is foreclosed, strictly, according to the terms of the mortgage, or in the manner provided by law."

The present Mr. Justice BEAN, in *Templeton* v. *Lloyd,* 59 Or. 52, 57 (109 Pac. 1119, 115 Pac. 1068), cited this case with approval.

Again we advert to the statute contained in Section 10184, Or. L.:

"Whenever in any mortgage of goods and chattels the parties to such mortgage shall have provided the manner in which such mortgage may be foreclosed, such mortgage, upon breach of the conditions thereof, may be foreclosed in the manner therein provided, and not otherwise; and if in any such mortgage the manner in which the same may be foreclosed shall not be provided, then upon the breach of the conditions thereof, in case the consideration of such mortgage shall not exceed the sum of $500, the same may be foreclosed, the mortgaged property sold by the sheriff or any constable of the county in which such mortgage has been filed, upon the written request of the mortgagee, his agent, or attorney, upon such notice, and in the manner provided by law for the sale of personal property upon execution; and if the consideration of such mortgage shall exceed the sum of $500, the same may be foreclosed by an action at law in the circuit court of the county in which such mortgage may have been filed."

Under the doctrine of *Backhaus* v. *Buells, supra,* for all that appears in the complaint, and conceding that Ebbert had given mortgages to the plaintiffs, he had "such a title to the property mortgaged that he may sell or further incumber it." The chattel mortgage annexed to the defendant's answer and introduced in evidence discloses a situation whereby it could avail itself of Section 10184 and sell the mortgaged property, and there is no dispute in the evidence, not only that the mortgage contained a stipulation that such a procedure could be employed in foreclosing, but that it was in fact employed and that the sale of which the plaintiffs complain was made by the sheriff of the county, operating under that section. The averment of the complaint is that:

"All of said animals were so taken, sold and disposed of by the defendant, First National Bank of Condon, Oregon, to divers persons, who have carried

the same away to places to plaintiffs unknown, all to the damage of the plaintiffs to the amount of $2600.''

All that is attributed to the defendant is that it sold the property. It is not said that the defendant carried the property away, but only that it sold it. It is clear, from what has been said, that the defendant had a right to take a mortgage from Ebbert, although a junior mortgage. With the right to take it goes the further right, by operation of law, to enforce it, for it is said in our Constitution, in Section 10, Article I:

'' * * * every man shall have remedy by due course of law for injury done him in his person, property or reputation.''

It is but mockery to say that the mortgagor may give a second mortgage; that the second mortgagee may take that mortgage, and yet that he cannot be allowed to enforce it in the manner in which both parties agree it may be enforced, all of which has the sanction of the statute about the foreclosure of chattel mortgages. Of course, without haggling or dispute, all he can sell is that interest which *Backhaus* v. *Buells* says the mortgagor may sell or further encumber. The rights of the senior mortgagees are emblazoned on the records of the county, imparting constructive notice to everyone who buys at a sheriff's sale. In such cases the junior mortgagee does not profess nor assume to sell more than what his mortgage covers, which is that estate of the mortgagor mentioned in *Backhaus* v. *Buells*. It has always been the law that a person buying property at a sheriff's sale upon execution is subject to the rule of *caveat emptor*. The remedy of the plaintiffs to realize upon their mortgage has not been infringed in any way by any act of the defendant bank appearing

117 Or.—5

either in the pleadings or in the record. The right to foreclose and realize upon the property exists the same now as it did before on behalf of the plaintiffs. The defendant is not required, in operating under its mortgage, to guarantee the title to anybody or to underwrite the superior claim of the plaintiffs. In short, the defendant had a right to take a second mortgage. It had a right under the statute and under the terms of that mortgage to pursue its remedy upon what it had. The statute does not provide for making the superior mortgagee a party. In fact there are no parties involved under the statutory mortgage foreclosure except the immediate parties to the instrument being foreclosed. Indeed, if it were a foreclosure by a suit in the Circuit Court under Section 423, it would not be necessary for the defendant here to make a party defendant of the senior mortgagee, for that section says:

"Any person having a lien subsequent to the plaintiff upon the same property or any part thereof, or who has given a promissory note or other personal obligation for the payment of the debt, or any part thereof, secured by the mortgage or other lien which is the subject of the suit, shall be made a defendant in the suit, and any person having a prior lien may be made defendant at the option of the plaintiff, or by the order of the court when deemed necessary."

It is beyond the comprehension of the writer to say why the defendant bank is guilty of conversion when it did only what its chattel mortgage, and the statute besides, gave it a perfect right to do. Having done what it had a right to do, namely, sell the property subject to the mortgage and by operation of law and the doctrine of *caveat emptor,* to the superior lien of the plaintiffs' mortgage, it was not required to go further and guarantee the behavior of the purchasers

respecting the property. If the plaintiffs would recover they must look to those who have wronged them and not to one who had done only what it had a right to do.

No possession of the plaintiffs has been violated for it is not claimed that they ever had possession of the property. They have, as much a right to pursue the property now as they ever had and no act of the defendant is shown, except what it had a lawful right to do. It is not shown that that act transgressed upon any superior right of the plaintiffs. As laid down in *Zorn* v. *Livesley,* 44 Or. 501 (75 Pac. 1057):

"A chattel mortgagee whose mortgage is properly recorded may safely rely on the notice conveyed by the record, and is not obliged for his protection to take possession of the mortgaged property, even when he is entitled to do so."

It is said by some that it was an infringement of the rights of the plaintiffs to sell the mortgaged property in parcels, but we must remember that the statute about foreclosing a chattel mortgage requires the sale to be made in the manner provided by law, for the sale of personal property upon execution. The statute controlling that feature reads thus:

" * * When the sale is of personal property capable of manual delivery, and not in the possession of a third person, association, or corporation, it shall be within view of those who attend the sale, and be sold in such parcels as are likely to bring the highest price, * * ." Section 238, Or. L.

Respecting the rights of the mortgagor's creditors to subject his interest in previously mortgaged chattels to the payment of junior debts, the following cases are worthy of consideration. *Lafeyth* v. *Emporia National Bank,* 53 Kan. 51 (35 Pac. 805), was a

case where the bank, being junior mortgagee as to part of the band of cattle, participated in a sale by the mortgagor of two head of cattle not included in its mortgage and applied the proceeds to its claim. The right to sell the mortgaged property was upheld, but the defendant was cast in damages for the sale of the two head of cattle not included in its mortgage. According to *Hale* v. *Omaha Nat. Bank,* 39 N. Y. Super. 207:

"A mortgagor of chattels remaining in possession before default under the clause entitling him to such possession, has an interest in the property which is the subject of levy and sale on execution against such mortgagor.

"Although the interest which passed to the purchaser at such sale is only such an interest as the mortgagor has, yet the parties promoting the sale are not trespassers if the sale is in general terms without any notice being taken of the existence of the mortgage."

*Manning* v. *Monaghan,* 28 N. Y. 585, was a case where it was held that the mortgagor in possession of goods has an interest in the property subject to execution or attachment. The sheriff and promoters of sale are not trespassers if the sale is in general terms. In *Woodside* v. *Adams,* 40 N. J. L. 417, a syllabus reads thus:

"A bailiff having a landlord's warrant to distrain the goods and chattels of a tenant for rent, or an officer having an execution against him, may levy upon the interest of the tenant in goods and chattels which he has mortgaged to a third person and may sell the mortgagor's interest in them, both before and after breach of condition, and even after the mortgagee has taken possession without being liable to an action by the mortgagee: provided that in so doing no substantial injury be done to the interests of the mortgagee."

In *Hull* v. *Carnley,* 17 N. Y. 202, it is said:

"A sheriff is not liable to the mortgagee of chattels as for trespass and conversion in seizing and selling them article by article without recognizing the interest of the mortgagee where the mortgagor is entitled to the possession of the chattels at the time of sale."

So also in *Goulet* v. *Asseler,* 22 N. Y. 225, it is said:

"A mortgagee of chattels which have been sold under execution against the mortgagor who was in possession and entitled to possession until default, cannot maintain an action in the nature of trespass or trover for the value of the goods."

Likewise in *Hathaway* v. *Brayman,* 42 N. Y. 322 (1 Am. Rep. 524):

"A mortgagee of chattels cannot recover in an action for an allged conversion thereof against a purchaser from the mortgagor in possession, when such purchaser has sold and delivered the property to a third person, before default in payment of the mortgage and before demand of possession by the mortgagee; although such mortgagee is empowered by the terms of the mortgage, which is duly filed, to take possession of the property at any time, in case he deems himself unsafe."

In brief, on the subject of the sufficiency of the complaint, the plaintiffs have not shown themselves to be the owners of and entitled to the possession of the property, either by direct averment or by the allegation of probative facts, so as to bring themselves within the conditions of Section 10183, Or. L. Moreover, they have not shown any act of the defendant that it might not lawfully do under the provisions of its chattel mortgage.

It remains to consider attorneys' fees as an element of damages. The instant cause is not an action *ex*

*contractu.* It is one purely *ex delicto* in which the basic principle of damages is compensation. All that the plaintiffs complain about is the conversion of their property. Granting that the defendant did in very truth convert that property to its own use, yet, at that instant, the measure of the plaintiffs' damage would have been the satisfaction of the debt owing from their mortgagor. No act of the defendant occurring thereafter is narrated to show any increase of that damage. There is no averment that the plaintiffs have incurred any liability for attorneys' fees whatever. They propose to exact compensation for an expense which they have not shown has arisen and which may never occur in the future. It is not stated that any suit or action has been instituted to "collect said note." It is only by enforcement of the terms of the contract set out in the note that an attorney's fee can be allowed or that the plaintiffs can expect to reap any benefit from it. The gravamen of this action is something entirely collateral and is not a suit or action to collect the note. To allow an attorney fee as an element of damage and not in fulfillment of the contract is to evade the statute, which says, in Section 561, Or. L.:

"The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties; but there may be allowed to the prevailing party in the judgment or decree certain sums by way of indemnity for his attorney fees in maintaining the action or suit, or defense thereto, which allowances are termed costs."

*Jandt* v. *South*, 2 Dak. 46 (47 N. W. 779), was an action by the plaintiff, the owner and holder of a chattel mortgage, covering certain personal property described in his complaint, against a sheriff who had attached and taken possession of the property in an

action brought by certain creditors of the mortgagors. The trial court allowed the prevailing party, the plaintiff, thirty dollars for three days' time for attending upon the case; fourteen or fifteen dollars for personal expenses during the same time, and fourteen dollars for expenses of an attorney. The court there, treating of this feature, referred to the statute in that jurisdiction, much like our Section 561, already quoted, relating to the allowance of costs as indemnities for attorney fees. In addition to this, in that case there is quoted from the statute of that jurisdiction the following:

"When by the terms of any written instrument it appears that the debtor has made a written contract for the allowance of attorney's fees, the same must be allowed by the court in conformity to the instrument, and must form a part of the judgment and be incorporated therein."

We have no such statute, but there the court, notwithstanding that enactment, discusses the question thus:

"Does the Statute authorizing the recovery in an action for the wrongful taking, or detention of personal property of damages for the detention, change the rule? We think not. The general rule as to damages in tort actions or actions not founded upon contract is the value of the property wrongfully taken at the time, or at any time before recovery. When the action is for the recovery of specific articles of personal property wrongfully taken in addition to a recovery of the property the prevailing party may recover damages for the wrongful detention. The reasons for this provision are apparent. It will often occur that the prevailing party has sustained damage in being deprived of the use of his property by the decrease in the value of the property while deprived of its possession, or the property may have been in-

jured or damaged while the prevailing party was deprived of his right of possession. In these and like cases, damages for detention would be recoverable. We see no more propriety in allowing the prevailing party in this action compensation for personal expenses, payment for his loss of time in connection with the prosecution of the action, and for attorney's and counsel fees, than in an action on contract, an action for trespass, or any personal action. It could not have been the intention of the Legislature in giving compensation to a prevailing party in the way of damages for the wrongful detention of his property to authorize the successful party to recover for personal expenses, loss of time, expenses of an attorney, as well as counsel and attorney's fees. Should this court sanction or sustain the allowance of items of this kind, may we not reasonably expect to be called upon to sanction an allowance for injury to feelings, or for mental anxiety of the aggrieved party by reason of the wrongful detention of his property?''

On this ground the judgment of the court was reversed. In *Young* v. *Tustin*, 4 Blackf. (Ind.) 277, the action was for killing the plaintiff's horse, a clear case of tort not differing in principle from any other form of conversion. Speaking by Mr. Justice BLACKFORD it was said:

"The court refused to instruct the jury that the plaintiff could not recover counsel fees, but instructed them that they might give the plaintiff, by way of damages, his reasonable expenses in the prosecution of the suit. The court committed an error in refusing the instructions asked for, and in giving those which were given. The jury cannot increase the amount of their verdict for the plaintiff by the allowance of counsel fees. The only fee of that character which a successful plaintiff can be entitled to is that which the statute denominates an attorney's fee, and that is only recovered by its being included in the judgment for costs.

"There is another objection which not only applies to the instructions refused, but also to those which were given.    This is not a cause in which any damages, not naturally and necessarily arising from the killing of the horse, could be recovered; because the declaration contains no averment that any such damages had been sustained.    This objection to the recovery of the counsel fees and expenses in question, were there no other objection to their recovery, would be fatal.    In actions of trespass, the plaintiff cannot recover damages which are not implied by law from the wrong committed, unless they are specially stated in the declaration.''

Where there is no averment that the plaintiffs have incurred any expenses whatever for attorney's fees, the natural and normal compensation for the conversion of the property is the reasonable value thereof at the time and place of conversion, limited, of course, by the lesser amount of the debt due to the special owner upon which his right of special property depends.    In *Kelly* v. *Rogers,* 21 Minn. 146, it was said:

"At the trial, the plaintiff proved, under objection, what would be a reasonable attorney's fee in this case, and the admission of this evidence is assigned as error.    It is perfectly well settled that the fees of attorneys and counsel, and other expenses of the litigation, beyond legal costs, cannot be recovered by the plaintiff in any actions of contract, or in those actions of tort in which punitive damages are not allowed; for, *first* these expenses are not the legitimate consequence of the tort or breach of contract complained of; *second,* to allow these expenses to the plaintiff, which are never allowed to a successful defendant, would give the former an unfair advantage in the contest; and *third,* where, as in this state, it is provided by statute that 'the prevailing party may be allowed certain sums, termed costs, by way of indemnity for his expenses in the action,' it is not in the power of courts or juries to increase the allow-

ance fixed by statute, however inadequate that allowance may be." Citing *Day* v. *Woodworth,* 13 How. 363 (14 L. Ed. 181).

*Chase National Bank* v. *Meholin,* 18 Idaho, 308 (109 Pac. 510), was a case where the principal note provided for attorney fees, yet it was held that such fee was not the one to be realized out of the proceeds of collateral securities supporting the principal note. In other words, the collection of the collateral security was not an action on the note for which that fee was provided.

"This provision in the notes in suit calls for the payment only of a reasonable attorney's fee, for services actually rendered in conformity with its terms."

This was decided in *Mechanics' American National Bank* v. *Coleman,* 204 Fed. 24, 31 (122 C. C. A. 338, 345), where an attorney was actually employed by the bank to advise about and conduct the collection of collateral, and the court decided that no fee could be allowed for such services. See, also, *Hatch* v. *Hart,* 2 Mich. 289, a case in replevin; *Stopp* v. *Smith,* 71 Pa. 285, a trespass case; *Gregory* v. *Woodbery,* 53 Fla. 566 (43 South. 504), a replevin case; *Winsted* v. *Hulme,* 32 Kan. 568 (4 Pac. 994); *Atchison, T. & S. F. Ry.* v. *Citizens F. & P. Co.,* 16 N. M. 163 (113 Pac. 813); *Flanders* v. *Tweed,* 15 Wall. (U. S.) 450 (21 L. Ed. 203); *Oelrichs* v. *Williams,* 15 Wall. (U. S.) 211 (21 L. Ed. 43).

It is plain that if the judgment for damages in this action of trover and conversion fails to yield enough to pay the plaintiffs' notes, they can bring an action upon them against the maker and in that action recover for the attorney's fee which he agreed to pay. It is only in such action that such a clause

can be enforced. In a sense it is self-executory and cannot be applied to anything not within its terms.

Moreover, a mortgage must be given for a definite, certain sum. In *Backhaus* v. *Buells, supra,* a chattel mortgage was given upon a crop of hops to secure, not only advances in money made and to be made, but also the payment of any damages which the mortgagee might sustain by virtue of the violation of the terms of the mortgage. After discussing the question at length, Mr. Chief Justice MOORE reached the following conclusion:

"The right given to a mortgagee of chattels * * to recover the possession of the mortgaged property after condition broken, is intended to enable him to secure such possession for the purpose of foreclosure only; and unless there is some debt, ascertained or declared, so that the foreclosure can be had, the remedy cannot be invoked. If the obligation is unliquidated, the mortgagee must resort to some appropriate judicial proceeding to enforce his lien, in which the amount of his debt can be ascertained, and the rights of the parties declared and enforced."

What is the appropriate proceeding as outlined by the contract upon which only the plaintiff can claim an attorney's fee? It is said in the note itself that the attorney's fee is to be allowed in said suit or action, that is to say, a suit or action upon the note and not upon some distantly related action for damages as for tort.

With the defective complaint before it, and charged with the duty of construing the legal effect of the defendant's junior chattel mortgage to be that it had the right to enforce that mortgage by selling what it had obtained thereby, the trial court ought to have sustained the objection of the defendant to the reception of any evidence for the plaintiffs and ought not

to have instructed the jury that attorney's fees were an element of damages in this action.

The judgment of the Circuit Court should be reversed.                                        REVERSED.